1        UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF INDIANA
2            INDIANAPOLIS DIVISION

3

   UNITED STATES OF AMERICA,    )
4                               )
                                ) CAUSE NO.
5        Plaintiff,             ) 1:10-CR-96-WTL-KPF
                                ) 1:11-CR-169-WTL-KPF
6        -vs-                   )
                                ) Indianapolis, Indiana
7   TREVOR J. SHEA,             ) January 13, 2012
                                ) 10:30 a.m.
8        Defendant.             )

9

10                   **BEFORE THE**
              **HONORABLE WILLIAM T. LAWRENCE**

11

12        OFFICIAL REPORTER'S TRANSCRIPT OF

13          PLEA AND SENTENCING HEARING

14

15   FOR THE PLAINTIFF:        Mr. Michael J. Donahoe
                               Indiana Federal Community
16                             Defender's Office
                               111 Monument Circle
17                             Suite 752
                               Indianapolis, IN  46204
18

19   FOR THE DEFENDANT:        Mr. Brant Cook
                               Assistant United States Attorney
20                             10 West Market Street
                               Suite 2100
21                             Indianapolis, IN  46204

22  Court Reporter:    Cathy Easley Jones, RPR, FCRR
                       Official Court Reporter
23                     46 East Ohio Street, Room 291
                       Indianapolis, IN  46204

24

25        PROCEEDINGS TAKEN BY MACHINE SHORTHAND
             COMPUTER-AIDED TRANSCRIPTION

2

1      *(In open court)*

2              THE COURT:  Be seated, please.  We are on the record

3      on Cause No. 1:10-CR-96-WTL-KPF and 1:11-CR-169-WTL-KPF,

4      united States of America versus Trevor Shea.

5              Are you Mr. Shea?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Good morning to you.

8              Good morning to you, Mr. Donahoe.

9              MR. DONAHOE:  Good morning.

10             THE COURT:  How are you?

11             MR. DONAHOE:  Fine, thank you.

12             THE COURT:  Good.

13             Mr. Cook.

14             MR. COOK:  Good morning, Your Honor.

15             THE COURT:  How are you?  Would you introduce who is

16     with you today?

17             MR. COOK:  I will.  I'm joined by Bonnie Kane from

18     the Department of Justice, Child Exploitation and Obscenity

19     Section, as well as Postal Inspector Tom Henderson from the

20     United States Postal Inspection Service.

21             THE COURT:  Nice to see you again.

22             Mr. Cook, have any victims of the offenses that

23     we're going to be discussing this morning been notified of the

24     proceedings today?

25             MR. COOK:  They have, Your Honor.

1          THE COURT:  Very well.

2          And what brings us together today, Mr. Donahoe?

3          MR. DONAHOE:  Mr. Shea would like to withdraw his

4     previously entered pleas of not guilty to the indictment and

5     the information, enter a plea of guilty as charged pursuant to

6     a plea agreement that's been filed with this Court, and then,

7     subject to the approval of the Court, proceed with sentencing.

8          THE COURT:  Very well.  Mr. Donahoe.  Would you and

9     Mr. Shea step to the podium, please; and if you would bring

10    with you the appropriate documents.

11         Mr. Shea, have you been able to hear me and

12    understand me all right this morning?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  I want to be able to tell you that in

15    the event that there comes a time during the proceeding this

16    morning that maybe I talk too fast or maybe I talk too low or

17    you can't hear me, or maybe I just bring up something that you

18    would like some additional time to talk to Mr. Donahoe about,

19    I would ask that you interrupt the proceedings.  Will you do

20    that?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  I don't want you to be embarrassed

23    whatsoever to do that because it's critically important that

24    you and I be able to communicate effectively and that

25    essentially I'm convinced that you understand all the things

4

1    that we're going to go over this morning.  All right?

2             THE DEFENDANT:  Yes, Your Honor.

3             THE COURT:  As I suggest, if you need additional

4    time to talk to Mr. Donahoe, I will allow you whatever time

5    you need to talk to Mr. Donahoe in private, again, so that we

6    can be assured that you understand everything that is going to

7    this morning.  All right?

8             THE DEFENDANT:  Yes, Your Honor.

9             THE COURT:  The first thing I need to do is to go

10   into some matters relating to your personal history.  In order

11   to do that, I would ask that you take an oath to tell the

12   truth.  Do you have any reservations about taking such an

13   oath?

14            THE DEFENDANT:  No.

15            THE COURT:  Would you as best you can raise your

16   right hand, sir?

17       *(Defendant sworn)*

18            THE COURT:  You may lower your hand.

19            You do now understand that you are under oath; and

20   if you answer any of my questions falsely, it may give rise to

21   an additional charge for perjury or for making a false

22   statement?  Do you understand.

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  All right.  Would you state your full

25   name for the record, please?

1              THE DEFENDANT:  Trevor James Shea.

2              THE COURT:  Are you a junior or a second or anything

3    like that?

4              THE DEFENDANT:  No.

5              THE COURT:  How old are you?

6              THE DEFENDANT:  21 years old.

7              THE COURT:  How far did you go in school?

8              THE DEFENDANT:  Some college.  I finished my first

9    semester of college.  I was in the middle of my second.

10             THE COURT:  Where did you go to high school?

11             THE DEFENDANT:  Chopticon High School in Morganza,

12   Maryland.

13             THE COURT:  And you graduated, I think, in 2009; is

14   that correct?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Very well.  And while you were in

17   school, did you learn to read, write and understand the

18   English language?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Have you and Mr. Donahoe been able to go

21   over all the documents that we're going to talk about today

22   and have you discussed them with Mr. Donahoe?

23             THE DEFENDANT:  I believe so, Your Honor.

24             THE COURT:  Have you had any problem in your

25   discussions with Mr. Donahoe as far as understanding the

1  paperwork?

2          THE DEFENDANT:  No, Your Honor.

3          THE COURT:  Specifically, did you have occasion to

4  read through the petition to enter the plea of guilty, the

5  plea agreement, the indictment and the charging information

6  submitted in this case?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Again, you've had an opportunity to talk

9  about those documents with Mr. Donahoe?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Do you feel you understand those

12  documents?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Now, those documents appear to have your

15  signatures on them, I believe the petition on page 5; the plea

16  agreement towards the bottom of page 11, as well as the bottom

17  of pages 12 and 13 as well.  And I would first ask, Mr. Shea,

18  are those your signatures?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And should your signatures appearing on

21  those documents tell me that you read and understood those

22  documents before you signed them?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  As you stand here today, are you under

25  the influence of any form of drug, medication or alcoholic

7

1  beverage?

2          THE DEFENDANT:  No, Your Honor.  I'm on a long-term

3  Zoloft medication; but it doesn't really have that much effect

4  on me for --

5          THE COURT:  Are you suffering from any sort of

6  medical, mental, physical or emotional condition that would

7  interfere with your ability to understand and participate in

8  these proceedings?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  And you believe the medication you're on

11  is not something that would interfere with your ability

12  either?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  All right.  All right.  Well, let's take

15  a look, Mr. Shea, at the indictment that has been submitted in

16  this case.  And I will be specifically referring to Cause

17  No. 1:10-CR-96.

18          In that indictment after some introductory

19  passages -- I believe there are four paragraphs.  In that

20  indictment, the grand jury has charged that on or about

21  September the 20th, 2009, within the Southern District of

22  Indiana and elsewhere, that you, Trevor J. Shea, did employ,

23  use, persuade, induce, entice and coerce a minor, to wit, Jane

24  Doe 1, to engage in sexually explicit conduct for the purpose

25  of producing any visual depiction of such conduct; and such

1  visual depiction was actually transported and transmitted

2  using any means or facility of interstate or foreign commerce,

3  or in or affecting interstate or foreign commerce,

4  specifically, and each count then is designated by a

5  particular digital file name.

6          And as you will see, Count 1 concerns digital file

7  name BLAHHH.JPG.

8          Count 2, deals with digital file name DSCN4067.JPG.

9          Count 3 deals with digital file name 2.AVI.

10          Count 4 deals with digital file name 3.AVI.  We're

11  going to talk about that in more specific terms later on but

12  each count of which is a separate violation of the United

13  States Code Title 18 Section 2251(a) and 2251(e).

14          Do you understand that those are four separate

15  counts?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And you and Mr. Donahoe have talked

18  about those?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do you have any questions about that

21  particular charge?

22          THE DEFENDANT:  I don't know if it's appropriate to

23  ask.  However, there's a slight technical error, I believe, in

24  the wording.  It says I did "employ, use, persuade, induce,

25  entice and coerce a minor."  I did not do every single one of

1  those things.  I think the word should be "or" where the "and"

2  is.  I don't know if that really was worth bringing up.

3          THE COURT:  Mr. Donahoe, if you want a moment,

4  that's fine.

5      *(A discussion was held off the record by Mr. Donahoe and*

6  *the defendant).*

7          THE COURT:  Mr. Shea, questions?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Do you feel comfortable with that

10  charge?  Is there any questions that you have of me or of

11  Mr. Donahoe that you want to pursue?

12          THE DEFENDANT:  No, Your Honor.

13          MR. DONAHOE:  I think his hangup there was with the

14  word "employ," which he was taking in its strict sense; and he

15  didn't want the Court to believe that he had hired anybody or

16  paid anyone to do this.  I think that's what he was stuck on.

17          THE COURT:  Very well.

18          All right.  So you feel that you understand Counts

19  1, 2, 3 and 4 of that indictment?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  You are also charged, as you know,

22  Mr. Shea, in a charging information.  That is under Cause

23  No. 1:11-CR-169.

24          Before we go over that charge, though, I want to

25  discuss briefly with you the waiver of indictment that you

1  signed in front of Magistrate Judge Foster, I believe, on the

2  27th day of September of this year.

3          I don't know whether, Mr. Donahoe, you have a copy

4  of that.

5          MR. DONAHOE:  We do.

6          THE COURT:  I would like to refer you to that,

7  Mr. Shea; and it would appear that in a document entitled

8  "Waiver of Indictment," that Judge Foster went through with

9  you the nature of the charges and what your rights were

10 pursuant to being charged with a charging information as

11 opposed to an indictment.  Do you remember that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you remember also signing the waiver

14 of indictment towards the bottom of that page?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Do you have it in front of you now?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Again, is that your signature?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  You do know that you have the

21 constitutional right to be charged by an indictment of a grand

22 jury, but you can waive that right and consent to being

23 charged by a charging information by the United States

24 Attorney.  You understand that?

25         THE DEFENDANT:  Yes, Your Honor.

11

1          THE COURT: And instead of indictment, as you know,

2    the felony count in -- excuse me -- counts in the charging

3    information have been brought by way of the U.S. Attorney by

4    the filing of that charging information. You understand?

5          THE DEFENDANT: Yes, Your Honor.

6          THE COURT: And unless you waive indictment, you may

7    not be charged with a felony unless the grand jury finds by

8    the return of an indictment that there is probable cause to

9    believe that a crime was committed and that you committed it.

10   You understand?

11         THE DEFENDANT: Yes, Your Honor.

12         THE COURT: Are those the same things that Judge

13   Foster went over with you?

14         THE DEFENDANT: Yes.

15         THE COURT: Is there any reason, Mr. Donahoe, that

16   the waiver of indictment should not be imposed in this

17   matter --

18         MR. DONAHOE: No, Your Honor.

19         THE COURT: -- as far as you're concerned? Very

20   well.

21         I do want to go over that information with you.

22   Again, in that charging information, there is some

23   introductory notes, I believe, four paragraphs; and you've

24   read and gone over those with Mr. Donahoe, have you not?

25         THE DEFENDANT: Yes, Your Honor.

1          THE COURT:   In Count 1 of the charging information,

2   Mr. Shea, the United States Attorney has charged that on or

3   about November the 9th, 2010 within the District of Maryland

4   and elsewhere, that the defendant, Trevor J. Shea, did employ,

5   use, persuade, induce, entice and coerce a minor, to wit, Jane

6   Doe 2, to engage in sexually explicit conduct for the purpose

7   of producing any visual depiction of such conduct; and such

8   visual depiction was actually transported and transmitted,

9   using any means or facility of interstate or foreign commerce,

10   or in or affecting interstate or foreign commerce; and such

11   depictions included the following digital files:

12          No. 1, MOV01187.MP4; No. 2, MOV01186.MP4; and No. 3,

13   MOV01174.MP4, all of which is alleged to be a violation of

14   Title 18 of the United States Code Sections 2251(a) and (e).

15          In Count 2 of the charging information, the United

16   States Attorney charges that on or about November the 4th,

17   2010, within the District of Maryland and elsewhere, that you,

18   the defendant, Trevor J. Shea, did employ, use, persuade, use,

19   induce, entice and coerce a minor, to wit, Jane Doe No. 3, to

20   engage in sexually explicit conduct for the purpose of

21   producing any visual depiction of such conduct; and such

22   visual depiction was actually transported and transmitted,

23   using any means or facility of interstate or foreign commerce

24   or in or affecting interstate or foreign commerce, and such

25   visual depiction included the following digital files:

1          No. 1, LAUREN678.WMV; No. 2, LAUREN1314.WMV; and

2   No. 3, LAUREN234.WMV, all of which is a violation of Title 18

3   of the United States Code Sections 25 -- 2251(a) and (e).

4          In Count 3 of the charging information, the United

5   States Attorney has charged that on or about December the 9th,

6   2010, within the District of Maryland and elsewhere, that the

7   defendant, Trevor J. Shea, did employ, use, persuade, induce,

8   entice and coerce two minors, to wit, Jane Does No. 4 and 5,

9   to engage in sexually explicit conduct for the purpose of

10  producing any visual depiction of such conduct; and such

11  visual depiction was actually transported and transmitted,

12  using any means or facility of interstate or foreign commerce,

13  or in or affecting interstate or foreign commerce; and such

14  visual depiction included the following digital file:

15         No. 1, NEW4.CAMREC, all of which is in violation of

16  Title 18 of the United States Code Section 2251(a) and (e).

17         Now, do you understand all of those charges?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Again, I know that the specifics of

20  those charges are contained in those digital depictions that

21  we have enumerated that we'll probably talk about in a little

22  bit.  But you understand what they are?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  And you've discussed them with

25  Mr. Donahoe?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  I will tell you, Mr. Shea, that each of

3   those counts, there being four of them, contains what are

4   called elements or subparts; and it would be those elements or

5   subparts that Mr. Cook and the Government would have to prove

6   to the satisfaction of a jury that would be seated to your

7   right, right in that jury box; and they would have to prove

8   each of these elements beyond a reasonable doubt.

9        Now, I believe those elements are mentioned in your

10  plea agreement in paragraph 4 on page 2, and I believe also on

11  paragraph 6 of page 3 of the plea agreement; and I want to go

12  over those with you.

13       Again, in order to sustain their burden of proof in

14  this case, the Government would have to prove the following

15  beyond a reasonable doubt as to each count.

16       No. 1, that you employed, used, persuaded, induced

17  and enticed or coerced a minor; No. 2, to engage in sexually

18  explicit conduct as such conduct is defined in Title 18 of the

19  United States Code Section 2256(2); No. 3, for the purpose of

20  producing any visual depiction of such conduct or for the

21  purpose of transmitting a live visual depiction of such

22  conduct; and lastly -- and this is in three parts -- the first

23  part being that you knew or had reason to know that such

24  visual depiction would be transported or transmitted using any

25  means or facility of interstate or foreign commerce, or in or

1  affecting interstate or foreign commerce or mailed.

2          No. 2 of part 4, such visual depiction was produced

3  or transmitted using materials that had been mailed, shipped

4  or transported in or affecting interstate or foreign commerce

5  by any means, including a computer.

6          And lastly, No. 3 of part 4, that such visual

7  depiction was actually transported or transmitted using any

8  means or facility of interstate or foreign commerce or in or

9  affecting interstate or foreign commerce or mail.

10          Do you understand those are the things, elements, if

11  you will, that Mr. Cook would have to prove to the

12  satisfaction of a jury before you could be convicted of any of

13  those seven counts that we're going to be talking about?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Do you have any questions about those?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  Mr. Shea, have you and Mr. Donahoe

18  talked about the sentencing process and things like the

19  sentencing guidelines in the event that I accept your pleas

20  this morning?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Have you looked at a chart or table that

23  looks something like this?  And I'm holding up the sentencing

24  table.

25          THE DEFENDANT:  Yes, Your Honor.

1           THE COURT:  Can you see enough of that to indicate

2   that you and Mr. Donahoe have gone over that sentencing table?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  You understand those guidelines, if you

5   will, are advisory to me; but I am obligated during the

6   sentencing phase of your case to calculate where you might

7   fall within that table; and I am also to consider not only the

8   table but departures either upward or downward from that table

9   before I fashion an appropriate sentence in your case?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Now, the Court is also duty bound to

12  look at a certain statute, Mr. Shea, and that's designated as

13  Title 18 of the United States Code Section 3553(a).  We're

14  going to be talking about it in some length when we get to the

15  sentencing phase; but clearly, it obligates the Court to look

16  at things like the nature and circumstances of the offense or

17  offenses.  It also obligates the Court to look at your own

18  personal history and characteristics and other things that

19  we're going to go through.

20          But I just want to make you aware and make sure you

21  understand that those are some of the things that the Court

22  will be considering prior to fashioning an appropriate

23  sentence in your case.  Do you understand?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Do you know what the potential penalties

1  are that you face if you indeed do plead guilty to Counts 1

2  through 4 of the indictment and 1 through 3 of the charging

3  information?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  You understand that each of those counts

6  or charges are felonies?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And that each of those may be punished

9  by a prison term of between 15 and 30 years and a fine of not

10 more than $250,000?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  And that I also may put you on

13 supervised release for a period of time for up to the rest of

14 your life.  Do you understand that penalty?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Do you understand that the 15-year term

17 I mentioned is what's called a mandatory minimum sentence as

18 to each of those counts?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  So essentially, the Court could not, in

21 the event I accept your pleas as to any of those seven counts

22 or all seven of them or if a jury found you guilty of any one

23 or all seven of those counts, you could not be sentenced to a

24 term of imprisonment of less than 15 years?  Do you understand

25 that?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  You understand that the Court may also

3   order or may be required to order under the mandatory Victim's

4   Restitution Act that you make restitution to any victims of

5   these offenses?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  You understand that if you are placed on

8   supervised release and you violate the conditions of

9   supervised release, that you can be given additional time in

10  prison?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  It also appears, Mr. Shea, that on the

13  dates of the commission of the crimes alleged in the charging

14  information, that you were on pretrial release pursuant to

15  Title 18 of the United States Code Section 3142(c) on the

16  charges contained in the indictment.  Do you know that?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Do you understand that pursuant to

19  Title 18 of the United States Code Section 3147, that you now

20  face an additional penalty of between 0 and 10 years

21  imprisonment on each of the three offenses you committed while

22  on this pretrial release that are charged in the information?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Do you further understand that any

25  sentence of imprisonment imposed on any of the three offenses

1    charged in the information must run consecutive to the

2    sentence imposed on the offenses charged in the information?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And you know what consecutive means, do

5    you not?

6              THE DEFENDANT:  Yes.

7              THE COURT:  All right.  Now, there's an additional

8    penalty, Mr. Shea, and that is you would have to pay what's

9    called a special assessment imposed by you if you plead guilty

10   or, quite frankly, if you were found guilty by a jury in this

11   case; and that would amount to $100 per count.  So the total

12   special assessment in your particular case would be $700.  Do

13   you understand that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Do you have any questions about any of

16   those potential penalties?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  Now, do you understand that there is

19   also a forfeiture clause that we will be dealing with?  And if

20   you will look on page 3 of the indictment and page 4 of the

21   charging information, that forfeiture provision is discussed.

22             What this tells me is that if I accept your pleas of

23   guilty to the charges that we have just discussed, that you

24   will be obligated to give up all right, title and interest to

25   any -- and it's noted -- any visual depictions described in

1   the United States Code, sections -- and those sites are

2   enumerated there -- and any book, magazine, periodical, film,

3   videotape or other matter which contains any visual depictions

4   which were produced, transported, mailed, shipped or received

5   in violation of Title 18 of the United States Code, Chapter

6   110; and also, any property, real or personal, constituting or

7   traceable to any gross profits or other proceeds obtained from

8   offenses of which you would then be convicted; and lastly, any

9   property, real or personal, used or intended to be used to

10  commit or to promote the commission of any offense to which

11  you are convicted and any property traceable to such property.

12          Now, what basically that tells me is that anything

13  they confiscated during the search of your residence out in

14  Maryland they can retain, basically.  There is no request, as

15  I understand it, for the Government to go any further to trace

16  any proceeds that are being -- this was not a crime of profit

17  necessarily.  So whatever they confiscated, you understand

18  that they can now keep?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  We're going to be talking about that

21  forfeiture probably a little bit more in the sentencing phase.

22  Do you understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Do you understand that this particular

25  plea today is governed by the Federal Rules of Criminal

1  Procedure and, specifically, Criminal Rule 11(c)(1)(B), which

2  tells me that the determination of your sentence is left

3  strictly up to me; that although Mr. Cook and the Government's

4  attorneys may indeed make certain recommendations not only

5  today but in the plea agreement itself, as well as you and

6  Mr. Donahoe may make certain recommendations in the plea

7  agreement and orally in the -- in your presentation during the

8  sentencing hearing, as well as in the memorandum that I know

9  you have filed as well as the Government -- do you understand

10 there are those recommendations but that I can ignore all

11 those recommendations?  Do you understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And I can sentence you to a sentence

14 that may be higher or lower than any of those recommendations.

15 Do you understand?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And if I do that, you will not be able

18 to withdraw your pleas of guilty simply because I have not

19 followed those recommendations.  Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Do you understand that there is no

22 parole on this federal sentence?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  That if you go to prison, you cannot be

25 released on parole?

 1              THE DEFENDANT:  Yes, Your Honor.

 2              THE COURT:  Do you know what good time credit is,

 3   Mr. Shea?

 4              THE DEFENDANT:  Yes, Your Honor.

 5              THE COURT:  Do you understand that in the federal

 6   system and in this case that you can receive a maximum of 54

 7   days off your sentence for every year that you serve in return

 8   for your good behavior while incarcerated?  Is that your

 9   understanding?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  You also understand that the offenses to

12   which you are pleading guilty, as I've stated, are felony

13   offenses, and that if your pleas are accepted, you will be

14   adjudged guilty of those offenses and that such a finding may

15   deprive you of valuable civil rights, such as the right to

16   vote, the right to hold public office in some cases, the right

17   to serve on a jury and certainly the right to possess any kind

18   of firearm.  Do you understand that?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  All right.  Now, I've mentioned the plea

21   agreement; and we've looked at part of it already this

22   morning.  Did you authorize Mr. Donahoe to negotiate with the

23   Government to try to work out a plea agreement in this case?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  Do you understand that I was not a party

1  to any of those negotiations?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Did you have the opportunity to read and

4  discuss the plea agreement with Mr. Donahoe before you signed

5  it?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And simply, the document that you

8  signed, is that the agreement that was reached between you,

9  Mr. Donahoe and the Government?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  Well, let's go through the

12  particulars contained in this plea agreement, Mr. Shea; and

13  I'm not going to read every word of the agreement, but I am

14  going to go over in some summary fashion every paragraph.  All

15  right?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And I want you -- if there's something I

18  say that maybe is not what you understood it to be or maybe,

19  again, as I suggested earlier, you want additional time to

20  talk to Mr. Donahoe, I would ask that you interrupt me.  Will

21  you do that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  All right.  Paragraph numbered 1 of the

24  plea agreement tells me that it would be your intent to plead

25  guilty to Counts 1, 2, 3 and 4 of the indictment filed under

24

1   Cause No. 1:10-cr-96, which charges you with sexually

2   exploiting a minor female, in violation of Title 18 of the

3   United States Code 2251(a) and (e).

4            That in regards to the charging information, that

5   you have agreed to waive your rights -- and we've talked about

6   that -- to be charged by an indictment of that information

7   under 1:11-cr-169, which again, charges that you sexually

8   exploited four minor females.  You understand that?

9            THE DEFENDANT:  Yes, Your Honor.

10           THE COURT:  Paragraph numbered 2 tells me that venue

11  for the offenses charged in the information as we've talked

12  about lies in the District of Maryland and in other federal

13  districts other than the Southern District of Indiana; but you

14  agree to waive any objection to venue in the Southern District

15  of Indiana for purposes of all proceedings regarding the

16  guilty plea hearing and the sentencing hearing regarding that

17  charging information.  You understand?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  All right.  Paragraph No. 4 tells me

20  that Counts 1 through 4 of the indictment, again, charge you

21  with the sexual exploitation of a minor female; and we've

22  talked about that charge.

23           It also talks about the penalties that I've already

24  gone over with you.

25           Paragraph No. 4 essentially restates those elements

1   that I have read to you.

2          Paragraph No. 5 talks about the charging information

3   and Counts 1, 2 and 3 of that charging information in regards

4   to the sexual exploitation of those four females that we have

5   already talked about in specific terms regarding the formal

6   charge.

7          It also talks about the penalties which I have gone

8   over with you already.

9          Paragraph numbered 6 talks about those elements or

10  components that, again, I have already talked about with you.

11  Again, those are the elements, the things, if you will, that

12  the Government would have to prove beyond a reasonable doubt

13  before you could be convicted.

14         Paragraph numbered 7 talks, again, about that you're

15  acknowledging that on the dates of the commission of the

16  crimes alleged in the charging information, that you were on

17  pretrial release on the indictment; and again, that you're

18  acknowledging that pursuant to Title 18 of the United States

19  Code Section 3147, that you now face an additional penalty of

20  between 0 and 10 years imprisonment for each of the three

21  offenses committed while you were on pretrial release that are

22  charged in the information.  You understand that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  You also understand that, again, that

25  any sentence that you receive as a result of that will run

1 consecutive to the sentence on the indictment and the

2 information?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Paragraph numbered 8 tells me that you

5 understand that this plea agreement is governed by that

6 Federal Rule of Criminal Procedure that I went over with you;

7 and again, that the determination of your sentence is left to

8 me, and that if I decide to impose a sentence either higher or

9 lower than those recommendations, that you will not be allowed

10 to withdraw your pleas of guilty simply because I have not

11 followed those recommendations.

12          Paragraph No. 9 tells me that, again, I am to use my

13 discretion to fashion an appropriate sentence in this case and

14 that I will consider that statute site, that 3553(a); and I

15 will also consider the advisory sentencing guidelines in

16 determining an appropriate sentence.  And indeed, I will

17 calculate where you fall within that sentencing guidelines;

18 but again, you understand that the final determination of your

19 sentence, including the applicable guideline sentencing range

20 and the calculation and your criminal history category will

21 all be made by me.  Do you understand?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Paragraph numbered 10 tells me that I

24 may impose consecutive sentences for each of the crimes

25 charged in the indictment and the information.  And you

1  understand what consecutive is, do you not?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  You further understand that pursuant to

4  this paragraph, that I cannot impose a sentence higher than

5  the combined statutory maximum of all of the counts in the

6  information and the indictment, with each offense to run

7  consecutive, with the exception that you are subject to the

8  possibility of that additional zero to 10-year term of

9  imprisonment on each count of the information that must run

10 consecutive.  Do you understand?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Paragraph 11 simply says that the plea

13 agreement is based upon information that was known to the

14 United States Attorney for the Southern District when this

15 agreement was signed back in September of 2011.

16           Paragraph 12 tells me that both parties are

17 reserving the right to present evidence and arguments in

18 support of what each believes to be an appropriate sentence in

19 this case, including the length of any term of supervised

20 release, and that you and Mr. Donahoe and Mr. Cook have not

21 agreed on a specific sentence.

22           Paragraph 13 tells me that you will be making

23 certain recommendations with the Government to me in regards

24 to any special conditions of supervised release, and this

25 would be in addition to any standard or special conditions

28

1  that I might impose; but again, those recommendations are your

2  recommendations to me and are not binding upon me.  You

3  understand?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  And I believe there are several of them.

6  A tells me that you are recommending as part of your

7  supervised release that you not possess any obscenity,

8  pornography, erotica or nude images and that any material

9  found in your possession shall be considered contraband.

10           B tells me that you're to participate in a program

11  of treatment for sexual disorders, including periodic

12  polygraph examinations as directed by the probation

13  department.

14           C tells me that you are not to have any unsupervised

15  contact with any minor child unless that contact has been

16  disclosed to and approved by the probation department.

17           Part D tells me that you will be registering as a

18  sex offender as required by law with the appropriate

19  authorities in any state where you reside, where you work or

20  where you attend school.

21           Part E tells me you're to submit to the search by

22  the probation department of your person, your office, your

23  business and your property, including computer systems and

24  they may use the assistance of any other law enforcement as

25  necessary, and you're to submit to the seizure of any

1  contraband that they find.

2          Part F tells me you are to submit to a DNA sample.

3          Part G tells me that you are to consent at the

4  direction of the probation department to having installed on

5  your computer a system to monitor your computer use.

6          All those things, Mr. Shea, are your agreements with

7  the Government to recommend as part of your supervised

8  release; is that correct?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Paragraph numbered 14 tells me that both

11  parties are reserving the right to present evidence and

12  arguments concerning how much or if any fine to be imposed.

13          Restitution you understand -- and we talked about it

14  a little bit.  You understand that pursuant to Title 18 of the

15  United States Code Sections 2259 and 3666(3)(A) that federal

16  law requires mandatory restitution for the offenses charged in

17  the indictment and the information and that both parties are

18  reserving the right to present evidence and argument

19  concerning the amount and the payment terms of that

20  restitution, and we'll talk about that more during the

21  sentencing phase.  You understand?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Paragraph numbered 16 talks about that

24  special assessment.  I indicated to you that that would amount

25  to $700.

30

1                Paragraph 17 tells me that you're agreeing that Jane

2   Does 6, 7, 8, 9 and 10, whose true identities are set out in

3   Exhibit B to the plea agreement, are indeed crime victims as

4   that term is defined by Title 18 of the United States Code

5   3771(E); and each shall have the rights of a crime victim as

6   set forth in that particular statute site to the same extent

7   as a crime victim named in the indictment or the information.

8   You understand that?

9                THE DEFENDANT:  Yes, Your Honor.

10               THE COURT:  Essentially, that will allow them, among

11  other things, to submit a victim's impact statement if they so

12  chose.  Do you understand?

13               THE DEFENDANT:  Yes, Your Honor.

14               THE COURT:  Paragraph 18 tells me that the

15  Government reserves the right to withdraw from this plea

16  agreement if you commit a new criminal offense before the date

17  of sentencing.

18               Paragraph 19 talks about that forfeiture provision

19  that we've talked about briefly before and that you are

20  abandoning all your right, title and interest in all property

21  seized by the authorities during the searches of your

22  residence, including but not necessarily limited to computer

23  equipment, cameras and the like.  You understand?

24               THE DEFENDANT:  Yes, Your Honor.

25               THE COURT:  Paragraph 20 tells me that you're to

1  provide all requested financial information to the financial

2  litigation unit of the United States Attorney's office for the

3  Southern District of Indiana for their use in the collection

4  of any fines or restitution that I might impose.

5         Paragraph 21 tells me that there is attached to this

6  plea agreement a stipulated factual basis, which is designated

7  as Exhibit A; and that represents in summary form an accurate

8  and complete recounting of your criminal activity involving

9  the sexual exploitation of children and your possession,

10 receipt, distribution and/or transportation of child

11 pornography; and you're agreeing that it does indeed provide a

12 sufficient factual basis for your pleas of guilty to the

13 offenses charged in the indictment and the information.  And

14 we'll be talking about that in some detail in a minute.

15        And lastly, you are agreeing in paragraph 22 that

16 nobody has threatened you or promised you anything or made any

17 representations to you or any other agreements reached other

18 than those set forth in this document.  Essentially, this

19 document contains all of the agreements that you and

20 Mr. Donahoe have reached with the Government.  Do you

21 understand that?

22        THE DEFENDANT:  Yes, Your Honor.

23        THE COURT:  All right.  There is an addendum to that

24 agreement which talks about the agreement you have with the

25 United States District Court for the State of Maryland.  Do

32

1  you understand that?

2          Can you look at that maybe, Mr. Donahoe?

3          Essentially what this tells me, that upon final

4  order of judgment in the cases here, that the U.S. Attorney

5  for the District of Maryland agrees to decline prosecution of

6  you for any offenses involving your sexual exploitation of

7  children or the possession, receipt, distribution and/or

8  transportation of child pornography arising from the facts

9  contained in that factual basis that we're going to go over.

10  Is that your understanding?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  All right.  Is there anything that I've

13  just gone over with you regarding this plea agreement that we

14  need to talk about in some more detail?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  I didn't read everything; but you read

17  everything, did you not?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And you discussed everything with

20  Mr. Donahoe?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Again, you do understand that the terms

23  of that plea agreement in this case are simply recommendations

24  to the Court and that I can reject those recommendations

25  without permitting you to withdraw your pleas of guilty and

1    impose a sentence that might be more severe than you expect?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  I want to make sure, Mr. Shea, that you

4    know that pleading guilty is not your only choice in this

5    matter; that there are a whole bunch of rights that you have

6    if you plead not guilty; and I want to go over those rights

7    with you to make sure you understand what they are and what

8    happens to them if indeed you do plead guilty.

9              You have the right to a speedy and public jury trial

10   right here in this courtroom with jurors seated to your right

11   right in that jury box.  The trial would be open so your

12   friends, your family and indeed the public could come and

13   watch the trial if they would want to do so; and they could

14   see and hear everything that happens in this case.

15             At this trial, you would be presumed to be innocent;

16   and the Government would have to prove your guilt beyond a

17   reasonable doubt.

18             You would have the right to have an attorney

19   represent you during this trial and to appeal any conviction

20   that you might receive.  So you would never have to face these

21   charges alone.  You would have a lawyer there to advise you at

22   each step of the process.

23             At this trial, you would have the right to remain

24   silent.  You would not have to testify or explain anything or

25   do anything because the entire burden of proof is on the

1   Government.

2          You also don't have to call any witnesses.  It is

3   the Government that is obligated to prove those elements,

4   those components, if you will, that I talked about earlier

5   beyond a reasonable doubt.

6          If you choose to remain silent and not to testify

7   and you choose not to call any witnesses, I would instruct

8   those jurors that they are not to consider the fact that you

9   don't testify or call any witnesses in any way in arriving at

10  their verdict.  So it would not factor into this case at all.

11         At this trial, you would have what's called the

12  right of confrontation.  What this means is that nothing

13  happens in this case unless you're right here in the courtroom

14  to see it and to hear it.  Nothing is done behind your back,

15  and certainly nothing is slipped to that jury that you can't

16  see or hear.

17         Part of that right of confrontation also includes

18  the right to challenge the witnesses the Government calls by

19  cross-examining them, and that might bring out facts favorable

20  to any defenses that you might have; and it also might bring

21  out information or the lack of information that might make

22  this case more difficult for the Government to prove.  So

23  that's what cross-examination can do for you.

24         I mentioned that you don't have to testify or call

25  witnesses, but you do have the right to testify if you would

35

1  choose to do that at trial; and you also have the right to

2  call witnesses and not just hope they show up because you've

3  asked them.  You would have the opportunity to ask this Court

4  to issue orders called subpoenas to those witnesses that would

5  obligate them to come to court.

6         If you couldn't afford the expense of having those

7  witnesses brought here, the witnesses' fees and the

8  transportation expenses, the Court would pay those expenses

9  for you also.

10        Now, if you are convicted at trial, you would have

11  the right to appeal your conviction and your sentence to the

12  Seventh Circuit Court of Appeals, which is located in Chicago;

13  and they would impanel a group of three judges that would

14  listen to any arguments that your lawyer might make regarding

15  any errors that you or your lawyer believe were committed

16  during your trial.

17        And if that Court of Appeals in Chicago agreed with

18  you and your lawyer, they could reverse your conviction and

19  your sentence, send this case back to the District Court where

20  those errors would be corrected and possibly you would have a

21  new trial.

22        And if the Seventh Circuit Court of Appeals in

23  Chicago believed there just wasn't enough evidence to convict

24  you of anything in the first place, they could send this case

25  back to the District Court and obligate the Government

36

1 essentially to dismiss this case so you would never have to

2 face these charges again.

3          Do you understand all of those rights that I have

4 just gone over with you?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Do you understand that by pleading

7 guilty, that you are waiving, that is, giving up all of those

8 rights that I have just gone over with you?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Just to be clear, by pleading guilty,

11 there will be no trial.  There will be no jury.  And

12 certainly, there will be no presumption of innocence.  Do you

13 understand?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Now, there is another aspect of this

16 that I want to make sure you know and that is that money

17 should not be a factor in deciding whether to use those rights

18 and plead not guilty, because if you cannot afford the expense

19 of an attorney, if you cannot afford the cost of having those

20 witnesses brought here, as I talked about before, and if you

21 cannot afford the expense of taking an appeal, the Court would

22 pay all those expenses for you.  And there is certainly no

23 charge for having a jury.  There is no charge for

24 cross-examination, for instance.  It is your right to have

25 those things.  So do you realize that money should not be a

1  factor in deciding whether to use those rights or whether to

2  give them up?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Have you discussed all of this with

5  Mr. Donahoe?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Is this what you want to do?  Are you

8  willing to give up these rights as part of your overall

9  agreement with the Government in this case?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  All right.  I do note, Mr. Cook, that

12 the Government has filed a stipulated factual basis in this

13 case.  Is it the Government's intent to supplement that

14 factual basis this morning?

15         MR. COOK:  That is not the Government's intent, Your

16 Honor.  Pursuant to the plea agreement in one of the

17 paragraphs the Court went over with the defendant, you'll note

18 the parties have stipulated that that factual basis should

19 provide a sufficient factual basis to sustain pleas of guilty

20 to all of the offenses in the indictment and the information.

21         THE COURT:  Very well.

22         I have in front of me that addendum to the plea

23 agreement that purports to be a factual basis in regards to

24 this case, Mr. Shea.  Maybe Mr. Donahoe can show it to you.

25 And it appears on the last page of that document.  There

1   appears to be a signature that purports to be yours.  Is that

2   your signature, Mr. Shea?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Again, should that tell me that you read

5   and understood the stipulated facts pursuant to the indictment

6   and the charging information contained in this document?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Mr. Shea, is there anything contained in

9   this stipulated -- document of stipulated facts, as it's

10  called, that is not true?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  Does it speak the truth of you?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  In this regard, Mr. Cook, the only

15  question I guess I really have is:  Is the Government

16  representing that the conduct placed in the stipulated

17  facts -- does that line up with the digital files that are

18  discussed in the information and the indictment?

19          MR. COOK:  I believe that it does.  To the extent

20  necessary and with no objection from the defense, I don't

21  believe -- and with leave of the Court, I would suppose I

22  would additionally proffer that the files recovered from the

23  defendant regarding each of the Jane Does named in the

24  indictment and the information and discussed in that Exhibit A

25  do line up with the files listed in those charging documents

39

1  and that each of those files does contain those minors engaged

2  in sexually explicit conduct.

3       THE COURT:  Mr. Donahoe, have you gone over and

4  matched up the factual representations in the stipulated

5  factual basis, if you will, and the digital files referenced

6  in the indictment and the information and are you satisfied

7  that they do indeed match up?

8       MR. DONAHOE:  I am satisfied that they match up,

9  Your Honor.

10       THE COURT:  Mr. Donahoe, is there anything that you

11  want to add to or detract from the stipulated factual basis or

12  bring to the Court's attention?

13       MR. DONAHOE:  No, Your Honor.

14       THE COURT:  What I would like, Mr. Cook, if you

15  please, would you recite just for the record the facts

16  regarding the violation of Mr. Shea's pretrial release which

17  would call into play the additional enhancement that we will

18  be talking about in a while?

19       MR. COOK:  I will, Your Honor.

20       As this Court's aware, in March of 2010, Mr. Shea

21  was arrested on a criminal complaint charging him with

22  violations of 18 USC 2251(a) relating to the sexual

23  exploitation of a minor who was later named in the indictments

24  returned in June 2010 as Jane Doe 1.  That was a minor female

25  residing here in Brownsburg, Indiana.

1          When Mr. Shea appeared in Indiana following his

2    arrest -- hang on just one moment, please, Your Honor.

3          On March 4th, 2010, Mr. Shea had his initial

4    appearance in the District of Maryland, was temporarily

5    detained.

6          Following a detention hearing in Maryland on

7    March 8th, he was released on his personal recognizance with

8    conditions.  He then appeared here in Indiana on March 17th,

9    2010; was released again, over the Government's objection, on

10   personal recognizance with conditions.  These conditions

11   included not to commit any criminal offenses, to have no

12   contact with any potential witnesses or alleged victims, not

13   to use any computer or internet-capable device and not to

14   possess any pornography.  He was then permitted to return to

15   his residence in Maryland with location monitoring.

16         On May 13, 2010, the United States moved the Court

17   for an order to revoke Mr. Shea's pretrial release and for the

18   issuance of an arrest warrant.  That motion was granted.

19         The United States learned on April 24th, 2010, an

20   individual residing at the defendant's residence had logged

21   into an online Myspace account that had been used to coerce

22   the production of child pornography with several of the

23   defendant's victims.

24         The defendant was arrested at his residence in

25   Maryland on May 14.  He was brought back to Indiana.  On

1  May 26th, he made an initial appearance in this district on

2  pretrial release relating to the revocation petition.

3        Testimony was heard that day from the defendant's

4  sister.  I believe her name was Amanda Shea.  She claimed that

5  she had logged into the Myspace account.  However, on

6  cross-examination, she did admit that it was a different

7  account than the one that he had been brought back on.  It

8  had, in fact, been a personal account as opposed to one that

9  was used for criminal activity.

10        Nevertheless, the Court decided not to rule that

11  day, set it out for a hearing on June 10, 2010; and the

12  defendant was again released on his personal recognizance on

13  those same conditions that I've previously mentioned back to

14  Maryland.

15        In December 2010, it came to the United States'

16  attention that a 16-year old girl in Florida, who was named as

17  Jane Doe 2 in the information, was being, quote-unquote,

18  blackmailed by someone on the Internet.  Again, the United

19  States went through the process of subpoenaing IP addresses

20  and other information that led back to the defendant's

21  residence.

22        A search warrant was obtained and executed on

23  December 21st, 2010 -- I'm sorry.  A motion was made by the

24  United States in this district to revoke the defendant's

25  pretrial release on December 21st.  On December 22nd, 2010, a

1 search warrant was executed at his residence in Maryland.  The

2 defendant was found inside.  He had a laptop in his bedroom.

3 The laptop was examined forensically.

4      Similar to the first computer that was seized from

5 Mr. Shea's residence in March 2010, there was a folder

6 entitled "Mine" within the computer.  Within that were

7 subfolders that had "mine" followed by the first name of

8 several victims of coercive online extortion for sexually

9 explicit photos.  Among those images, among those victims were

10 at least four additional minor victims.

11      These were found on a computer, again, that was in

12 the defendant's room and that he is now entered a plea of

13 guilty to.

14      I should note a couple things with regard to his

15 pretrial release conditions and these findings.

16      No. 1, Jane Doe 2, who is named in the information,

17 was a prior victim that had gone unidentified to that point,

18 who was then recontacted by the defendant in violation of that

19 release condition, that he not contact any prior victims.

20      Then, obviously, the use of the Internet to commit

21 these offenses was a violation of that pretrial release

22 condition.

23      And then finally, a standard condition of any

24 pretrial release is not to commit any additional offenses; and

25 obviously, as we see here, there were those additional

1  offenses committed.

2        Obviously, he wasn't supposed to possess pornography

3  either; and the offenses amounted to not just the production

4  of pornography, which was a new offense, but the possession of

5  that pornography which was also in violation of his pretrial

6  release.

7        THE COURT:  Mr. Donahoe, do you have any questions

8  of Mr. Cook regarding the proffer?

9        MR. DONAHOE:  No, Your Honor.

10        THE COURT:  Mr. Shea, did you hear the recitation

11  and the proffer by Mr. Cook?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  Is there anything that he said that you

14  disagree with?

15        THE DEFENDANT:  No, Your Honor.

16        THE COURT:  The Court preliminarily finds that the

17  anticipated pleas are supported by an independent basis in

18  fact with respect to the essential legal elements based upon

19  the stipulated factual basis as well as the proffer offered

20  this morning; and I place -- I will place Exhibit A to the

21  plea agreement, which constitutes the stipulated factual

22  basis, into evidence.

23        Now, Mr. Shea, we've covered a lot of territory this

24  morning.  We've talked about this case, and we've talked about

25  your rights.  We've talked about the plea agreement.

1          Do you have any questions for me about anything I've

2    covered with you or anything related to your case or the

3    consequences of your anticipated pleas of guilty?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  You do know that you have the absolute

6    right to plead not guilty and have this case heard and

7    considered by a jury?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  With respect to Mr. Donahoe's

10   representation of you, do you feel you have had sufficient

11   time to talk with him and to work with him to try to consider

12   any options that you might have regarding this case?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Are you satisfied with his counsel, his

15   representation, and the advice that he's given you as your

16   lawyer?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Is there anything you wanted him to do

19   as your lawyer that Mr. Donahoe has failed to do?

20         THE DEFENDANT:  No, Your Honor.

21         THE COURT:  All right.  Well, let me ask you this

22   then.  With respect to the charges against you contained in

23   the indictment, which are essentially the sexual exploitation

24   of children and the production of sexually explicit images of

25   a minor and more specifically, where the grand jury has

1  charged that on or about the 20th day of September, 2009,

2  within the Southern District of Indiana and elsewhere, that

3  you, Trevor J. Shea, did employ, use, persuade, induce entice

4  and coerce a minor, to wit, Jane Doe 1, to engage in sexually

5  explicit conduct for the purpose of producing any visual

6  depiction of such conduct and such visual depiction was

7  actually transported and transmitted using any means or

8  facility of interstate or foreign commerce, or in or affecting

9  interstate or foreign commerce, to wit, in regards to Count 1,

10  the digital file name BLAHHH.JPG, how do you plead?

11          THE DEFENDANT:  I plead guilty, Your Honor.

12          THE COURT:  As to Count 2, which contains the

13  digital file name DSCN4067.JPG, how do you plead?

14          THE DEFENDANT:  Guilty, Your Honor.

15          THE COURT:  In regards to Count 3, which involves

16  digital file name 2.AVI, how do you plead?

17          THE DEFENDANT:  Guilty, Your Honor.

18          THE COURT:  As to Count 4, in regards to digital

19  file name 3.AVI, how do you plead?

20          THE DEFENDANT:  Guilty, Your Honor.

21          THE COURT:  In regards to the charging information

22  under 1:11-cr-169, specifically, as to Counts 1, 2 and 3

23  involving the sexual exploitation of children and the

24  production of sexually explicit images of a minor and,

25  specifically, wherein the United States Attorney has charged

1  that on or about November the 9th, 2010, within the District

2  of Maryland and elsewhere, that you, Trevor J. Shea did

3  employ, use, persuade, induce, entice and coerce a minor, to

4  wit, Jane Doe 2, to engage in sexually explicit conduct for

5  the purpose of producing any visual depiction of such conduct,

6  and such visual depiction was actually transported and

7  transmitted using any means or facility of interstate or

8  foreign commerce, or in or affecting interstate or foreign

9  commerce, and such visual depiction included the following

10  digital files:  No. 1, MOV01187.MP4; No. 2, MOV01186.MP4 and

11  No. 3, MOV01174.MP4, how do you plead, guilty or not guilty?

12         THE DEFENDANT:  Guilty, Your Honor.

13         THE COURT:  As to Count 2 of the charging

14  information under 1:11-cr-169, again, involving the sexual

15  exploitation of children and the production of sexually

16  explicit images of a minor, and, specifically, wherein the

17  U.S. Attorney has charged that on or about the 4th day of

18  November 2010, within the District of Maryland and elsewhere,

19  that you, Trevor J. Shea, did employ, use, persuade, induce,

20  entice and coerce a minor, to wit, Jane Doe No. 3, to engage

21  in sexually explicit conduct for the purpose of producing any

22  visual depiction of such conduct, and such visual depiction

23  was actually transported and transmitted using any means or

24  facility of interstate or foreign commerce or in or affecting

25  interstate or foreign commerce, and such visual depiction

1    included the following digital files:  No. 1, LAUREN678.WMV;

2    No. 2, LAUREN1314.WMV; and No. 3, LAUREN234.WMV, how do you

3    plead, guilty or not guilty?

4              THE DEFENDANT:  Guilty, Your Honor.

5              THE COURT:  With respect to Count 3 of the charging

6    information under 1:11-cr-169, again, involving the sexual

7    exploitation of children and the production of sexually

8    explicit images of a minor, and, specifically, wherein the

9    U.S. Attorney has charged that on or about December the 9th,

10   2010, within the District of Maryland and elsewhere, that you,

11   the defendant, Trevor J. Shea, did employ, use, persuade,

12   induce entice and coerce two minors, to wit, Jane Does 4 and 5

13   to engage in sexually explicit conduct for the purpose of

14   producing any visual depiction of such conduct, and such

15   visual depiction was actually transported and transmitted

16   using any means or facility of interstate or foreign commerce,

17   or in or affecting interstate or foreign commerce; and such

18   visual depiction included the following digital file:

19   NEW4.CAMREC, how do you plead, guilty or not guilty?

20             THE DEFENDANT:  Guilty, Your Honor.

21             THE COURT:  Are you offering these pleas of guilty

22   this morning, Mr. Shea, voluntarily and of your own free will?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Are you doing this because you are

25   guilty or are you pleading guilty for some other reason?

1          THE DEFENDANT:  I'm pleading guilty because I am

2    guilty, Your Honor.

3          THE COURT:  Did anybody force you to plead guilty?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Did anybody threaten you if you did not

6    plead guilty?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  It's certainly clear to me, Mr. Shea,

9    that you are fully competent and capable of entering these

10   informed pleas.  You are aware of the nature of the charges

11   against you and the consequences of your pleas of guilty.

12         I will conclude that your pleas of guilty are

13   knowing and voluntary and did not result from any force,

14   threats or promises, except those particular promises

15   contained in the plea agreement.

16         I will conclude that the pleas are supported by an

17   independent basis in fact with respect to the essential legal

18   elements based upon the stipulated factual basis that has been

19   placed into evidence this morning.  The pleas are, therefore,

20   accepted; and you are now adjudged guilty of the offenses

21   charged.

22         Mr. Donahoe, is it the defendant's desire to proceed

23   to sentencing on this matter this morning?

24         MR. DONAHOE:  Yes, it is.

25         THE COURT:  Why don't we take just a moment, allow

1  you to sit down.  I'm going to remain on the bench.  The court

2  will remain in session, but let's just take a couple minutes.

3     (A recess was taken.)

4          THE COURT:  Mr. Donahoe, are you ready?

5          MR. DONAHOE:  Yes.

6          THE COURT:  Would you and Mr. Shea reapproach the

7  podium, please?

8          Mr. Shea, would you state your full name for the

9  record again, please?

10          THE DEFENDANT:  Trevor James Shea.

11          THE COURT:  You understand that we are now moving

12  into the sentencing phase of your case?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Have you received a copy of the

15  pre-sentence investigation report submitted in this case?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And have you had an adequate opportunity

18  as far as you're concerned to review that report with

19  Mr. Donahoe?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Mr. Donahoe, do you feel you've had an

22  adequate amount of time to not only have received the report

23  but to discuss that with Mr. Shea?

24          THE DEFENDANT:  Yes, I have.

25          THE COURT:  I note that both sides have filed

1  sentencing memoranda in this case.  But for the comments

2  within those reports, are there any other objections to the

3  report as far as the Government is concerned?

4          MR. COOK:  Your Honor, the Government has no

5  objection as to the report.

6          THE COURT:  Mr. Donahoe?

7          MR. DONAHOE:  I raised some the other day with

8  probation; and they addressed them all in an addendum that was

9  filed, with the exception of the very first objection/comment

10 No. 1, which we are withdrawing.

11         THE COURT:  Do you wish to be heard on any of those

12 objections?

13         MR. DONAHOE:  No, Your Honor.

14         THE COURT:  Very well.  The Court will otherwise

15 accept the presentence report for the record and incorporate

16 the presentence report as a finding of fact.

17         Mr. Shea, as I indicated during the plea hearing,

18 the Court is obligated to run the guidelines, if you will; and

19 I would like to do that with you.  I believe that the

20 calculation begins in paragraph numbered 44 of the

21 pre-sentence investigation report.

22         I would note again that these guidelines are

23 advisory in nature and simply are one of the tools the Court

24 uses to fashion an appropriate sentence in this case.

25         The Court would acknowledge that the 2011 manual is

1  used to determine this advisory guideline and that pursuant to

2  Section 3D1.2(d) of the guidelines, none of the counts that we

3  are going to be considering this morning group.

4         Regarding the calculations for the guideline as

5  directed by the application note 5, if the relevant conduct of

6  an offense of conviction includes more than one minor being

7  exploited, whether specifically cited in the count of

8  conviction or not, each minor shall be treated as if contained

9  in a separate count of conviction.  Thus, there is a separate

10  set of calculations for each of Jane Does, 6, 7, 8, 9 and 10.

11         Similarly, regarding the calculations for the

12  charging information under 1:11-cr-169, Count 3 includes two

13  victims, Jane Doe 4 and 5; and there will be two sets of

14  calculations for that count also.

15         So going through the calculation that begins in

16  paragraph 45, the base offense level for this violation calls

17  for a base offense level of 32.  Four levels are added because

18  the images portrayed sadistic-masochistic material.

19         Two points are added for obstruction of justice

20  because you continued to access the Internet and commit the

21  offenses listed in the charging information while you were on

22  pretrial supervision.  The adjusted offense level then for

23  group 1 is a level 38.

24         As to group 2 in Count 2 of the indictment, we're

25  again talking about Jane Doe 1.  The base offense level is 32.

1  Four levels are added because the images portrayed sadistic

2  and masochistic material.

3          Two points are added because of your obstruction of

4  justice, again, because you continued to access the Internet

5  and commit the offenses listed in the information while you

6  were on pretrial supervision.  The adjusted level for group 2

7  is also 38.

8          Group 3 of Count 3, again, involving Jane Doe in the

9  indictment, base offense level is 32.  Four levels are added

10 again because the images portrayed sadistic-masochistic

11 material.  Two points are added for your obstruction of

12 justice as previously noted.  The adjusted offense level for

13 group 3 is 38.

14         Group 4, Count 4, again, dealing with the sexual

15 exploitation of Jane Doe 1 under the indictment, begins with a

16 base offense level of 32.  Four levels are added because the

17 images portrayed sadistic and masochistic material.  Two

18 points are added because of your obstruction of justice

19 previously noted.  Therefore, the adjusted offense level for

20 group 4 is also 38.

21         Group 5 in regards to the indictment pertains to

22 Jane Doe No. 6.  Again, offense level of 32.  Two levels are

23 added because the images and videos contained minors that had

24 obtained the age of 12 but not the age of 16.  Four levels are

25 added because the images portrayed sadistic-masochistic

1  material.  Two levels are added for the previously noted

2  obstruction of justice.  The adjusted offense level for group

3  5 then becomes 40.

4          In regards to group 6 and the sexual exploitation of

5  Jane Doe 7 under the indictment, the base offense level again

6  is a level 32.  Because the images and videos contained minors

7  that, again, had obtained the age of 12 but not the age of 16,

8  2 levels are added.  Four levels are added because the images

9  portrayed sadistic-masochistic material.  And 2 levels are

10  added because of the obstruction of justice.  Consequently,

11  the adjusted offense level for group 6 is a level 40.

12          Group 7 involves the sexual exploitation of Jane Doe

13  8 under the indictment, again, base offense level of 32.  Four

14  levels are added because the images portrayed sadistic and

15  masochistic material.  Two levels are added because of the

16  obstruction of justice.  The adjusted offense level for group

17  7 then becomes 38.

18          Group 8 involves the sexual exploitation of a minor

19  and, specifically, Jane Doe 9.  Base offense level of 32.  Two

20  levels are added because the images and videos contained

21  minors that had attained the age of 12 but not the age of 16.

22  Two levels are added because the offense involved distribution

23  of Jane Doe -- to Jane Doe's No. 9 boyfriend.  Four levels are

24  added because the images portrayed sadistic and masochistic

25  material.  Two levels are added for his obstruction of

1  justice.  Therefore, the adjusted offense level for group 8 is

2  a level 42.

3        Group 9 involves the sexual exploitation of Jane Doe

4  No. 10.  Base offense level of 32.  Four levels are added

5  because the images portrayed sadistic and masochistic

6  material.  Two levels are added for obstruction of justice.

7  Adjusted offense level for group 9 is a level 38.

8        Group 10 involves the sexual exploitation of a minor

9  and, specifically, Jane Doe 2 in the charging information.

10  Base offense level of 32, with 4 points being added because

11  the images portrayed sadistic-masochistic material.  Three

12  points are added because of the obstruction of justice.

13  Adjusted offense level then for group 10 is a level 39.

14        Group 11 concerns the sexual exploitation of a

15  minor, Jane Doe No. 3, in the charging information.  Again

16  base offense level 32.  Two points are added because the

17  videos and images contained minors that had attained the age

18  of 12 but not the age of 16.  Three points are added for

19  obstruction of justice.  Adjusted offense level for group 11

20  is 37.

21        Group 12 involves Count 3 of the charging

22  information and involves the sexual exploitation of Jane Doe

23  4.  Again, base offense level of 32 because the images

24  portrayed sadistic-masochistic material.  Four points are

25  added.  Three points are added for obstruction of justice.

1    Total adjusted offense level for group 12 is 39.

2             Group 13 involves Count 3 of the charging

3    information and the sexual exploitation of Jane Doe 5.  Base

4    offense level, again, is 32.  Adjustment for obstruction of

5    justice is 3.  Therefore, the adjusted offense level for group

6    13 is 35.

7             Each of those are assigned units; and pursuant to

8    the multiple count adjustment under Section 3D1.4 of the

9    guidelines, the combined adjusted offense level then becomes

10   47.  Five levels are added because the defendant engaged in a

11   pattern of activity involving prohibited sexual conduct.  The

12   total offense level then would be a level 52.

13            Any objection to that specific calculation,

14   Mr. Donahoe?

15            MR. DONAHOE:  No, Your Honor.

16            THE COURT:  Does the Government have anything to say

17   about the guideline calculation?

18            MR. COOK:  No, Your Honor.

19            THE COURT:  All right.  The Court would acknowledge

20   the recent filing of the Government's motion regarding

21   defendant's substantial assistance to authorities.  In this

22   motion, the Government has moved for a departure from the

23   applicable guideline range and seeks a 2-level downward

24   departure.

25            Authorization for this court to impose a sentence

56

1  below the statutory minimum is not part of this motion.  Do

2  you wish to be heard in that regard in any way, Mr. Cook?

3          MR. COOK:  I don't have anything in addition to our

4  motion.

5          I would note that it's simply a 2-level suggestion

6  for a departure.  The defendant did provide some information

7  that I think will prove helpful and perhaps interdicting these

8  kinds of offenses in the future, but I don't think that that

9  amounts to something that is worth more than 2 levels.

10         I would also note, of course, that that -- as I'm

11 sure the Court will get to -- doesn't ultimately affect the

12 guideline range; but that's all I have, Your Honor.

13         THE COURT:  Mr. Donahoe, do you wish to be heard?

14         MR. DONAHOE:  Not on that point, Your Honor.

15         THE COURT:  Having then given careful consideration

16 to the guidelines, the Court will now find that the total

17 offense level of 52 is an appropriate calculation for the

18 offense; but as has been previously mentioned, the Court

19 accepts the Government's motion pursuant to Section 5K1 of the

20 sentencing guidelines and reduces the total offense level to

21 50.

22         Turning quickly and briefly to Mr. Shea's criminal

23 history, it would appear that he has no criminal history.  Is

24 there anything in that history that the Government disputes?

25         MR. COOK:  The Government has no objection.

1          THE COURT:  Any objection as far as Mr. Shea is

2    concerned, Mr. Donahoe?

3          MR. DONAHOE:  No, Your Honor.

4          THE COURT:  Based upon Mr. Shea's criminal history

5    then, under the guidelines, as indicated, he would have no

6    criminal history points.

7          Based upon the sentencing table in Chapter 5, part A

8    of the guidelines, that would place Mr. Shea in criminal

9    history category I.  I find that the computation is correct

10   and accordingly notes that the advisory guideline range for

11   imprisonment would be life.

12         Before we proceed, I would like to acknowledge the

13   memorandum that both the Government and the defendant have

14   filed in this case.

15         I would also like to acknowledge that I have read

16   carefully the letters that have been submitted in your

17   support, Mr. Shea; and I will be taking both the memoranda as

18   well as those letters into consideration when fashioning an

19   appropriate sentence in this case.

20         How would you like to proceed, Mr. Donahoe?

21         MR. DONAHOE:  I'll speak on behalf of Mr. Shea, and

22   then he'll address the Court.

23         THE COURT:  Very well.

24         MR. DONAHOE:  Obviously, the discretion that you

25   have in this case is about as vast as we see it.  Because

58

1  there is no minimum mandatory attached to the violation of

2  supervised release, that goes from zero to 10; and because

3  there is no binding law that the counts of conviction run

4  consecutively, then effectively, your discretion goes from 15

5  to life in this case.  So the sentence that you come up with

6  can obviously determine whether or not Trevor ever walks the

7  earth as a free man again.

8          And one of the most glaring pronounced aspects of

9  Trevor personally that comes out immediately when anybody

10 focuses on this case is his age, particularly the age he was

11 two years ago when he got involved in the first set of

12 offenses that make up the indictment.

13         And I would ask the Court to take that into account

14 because I think it's an extremely significant factor,

15 particularly in light of everything that we know about the

16 development of personality and the development of the brain.

17 And I provided the Court and opposing counsel with some

18 materials this morning that I wanted to refer to that say what

19 we sort of already intuitively know when we reach this age and

20 that is that the brain develops in such a way that the parts

21 that govern judgment, decision-making and impulse control are

22 not fully formed in someone who is in his late teens, and that

23 people at that age often use the emotional part of the brain

24 rather than the frontal lobe to make decisions, which gets

25 them in trouble.

1          Now, again, those are scientific studies that are

2     pretty reliable; and I don't think anybody's going to disagree

3     with it because it's in line with everything that we know

4     about ourselves from our own personal experience and

5     particularly if we've gotten old enough to have children and

6     then have them pass through their teens and early 20s.

7          And even though we are old enough to be legally

8     responsible for our actions as adults, old enough to go to

9     war, to vote, to sign contracts and adults in every other

10    respect, we can all look back on ourselves when we were 18,

11    19, 20 years old and recall what we were then and contemplate

12    the differences that have occurred in the intervening years.

13         So I'm asking the Court, I guess, to take that into

14    account and to fashion a sentence that will allow Trevor to

15    develop and have some chance at life again.

16         This is a case where I think it would be beneficial

17    if there were some sort of indeterminate sentencing structure

18    or a parole-type system where you could say, "Okay.  You've

19    got to get a minimum 15.  We know that.  Let take another look

20    in 15 years and see what you've become and what's happened to

21    you in the BOP, whether you've been a problem, whether you've

22    grown into a responsible adult" and then decide.

23         So you're in a position now where you've got to

24    predict the future to a great extent; and when we look ahead

25    15 years and ask ourselves a question, once we get there, then

1   what additional time is necessary to protect the public and to

2   punish Trevor?  How much additional above and beyond that

3   minimum that the Court is bound to is needed?

4          In Trevor's case, he is also unique not only in his

5   age but in the family that awaits him when he does get out.

6   And they're all here today in the front row.  On the far right

7   is his father, Michael Shea, who is a firefighter in

8   Washington, D.C.  And next to Mr. Shea is Trevor's sister,

9   Amanda.  And next to her is Trevor's mother, Lorraine Shea;

10  and next to Lorraine is Trevor's brother, Brian.

11         As the Court knows from our memorandum and from the

12  presentence report, these are all high-achieving, responsible

13  individuals that have good jobs.  They have absolutely no

14  criminal history.  There is no history of substance abuse; and

15  as Amanda said yesterday when the family was in my office --

16  she said -- you know, we were talking about the future and if

17  and when Trevor gets out and what lies ahead for him.  She

18  said, "He can come to any one of us.  He can come live with

19  any one of us."

20         Now, earlier this week I had a client get out of

21  Terre Haute who showed up at our office because he had

22  nothing; and he had no one, and I don't give him a terribly

23  great chance of success.  That's one end of the spectrum.

24         In Trevor's case, he's going to have numerous

25  options; and they are very, very good options.

1          Trevor's family has worked together as a unit to

2     support each other and to support Trevor while this case has

3     gone on, and I know that they are going to continue to do that

4     as he serves his sentence and, hopefully, as he tries to

5     re-enter society.

6          So it appears from everything that's before the

7     Court that Trevor was a late developer in many respects and

8     was immature even for his age at the time, which was very,

9     very young.

10          Trevor's cooperation I thought was –– was as good as

11     he could make it.  On page 5 of the statement of substantial

12     assistance, the Government indicates that in their opinion, it

13     was not timely; and I think that what Mr. Cook meant by that

14     was just that it wasn't quick enough to lead to the

15     prosecution of any other individuals.

16          But I didn't want the Court to get the impression

17     that Trevor held back or waited for a long time.  Mr. Cook and

18     I have been in discussions about that proffer session and that

19     debriefing for quite some time, and there were scheduling

20     issues and so forth.  So it didn't take place until just

21     recently, but Trevor has been ready and willing to do that

22     ever since he was incarcerated a year ago in December.

23          During that proffer session, he explained his

24     background with computers, his knowledge of computers and the

25     Internet, his interest in technology, his personal interest in

1  all of the other illegal activities and more unsavory aspects

2  of the Internet.

3          He talked about techniques and methods that other

4  blackmailers used.  He gave the Government screen names of

5  other blackmailers; talked about hacking activities and

6  techniques there; social engineering used to identify various

7  victims, screen names and Skype user names used by individuals

8  involved in this subculture and answered all of the

9  Government's questions to their satisfaction.

10          And at the end of that, Mr. Cook, who I know spends

11  part of his time educating adolescents and teenagers and

12  people about the dangers of the Internet, said that he found

13  the proffer session immensely helpful and informative.

14          So I think the Government is being somewhat

15  parsimonious I guess in their recommendation of only a 2-level

16  reduction as a result of that cooperation.  However, in the

17  grand scheme of things, it's kind of a drop in the bucket

18  whether it's 2, whether it's 4, whether it's 6.  You're still

19  at the range of life in prison.

20          This is a case, as we've tried to stress in our

21  sentencing memorandum, that I think requires the Court to

22  focus primarily on the 3553(a) factors as opposed to the

23  guideline.  I don't think Trevor fits the profile of the

24  typical defendant that this particular guideline was designed

25  to address, and I don't think that Trevor needs to be locked

1   up for the rest of his life.

2          When you consider the technology that's available

3   now and certainly will be in the coming future, whenever he's

4   done serving his sentence, along with the professionals of

5   U.S. probation and parole who can monitor where he lives, what

6   he has access to, what he does, the family support that he's

7   going to get in terms of a place to live, job, education that

8   he needs and whatever the Bureau of Prisons can provide in the

9   meantime as he serves his sentence, whether it's education,

10  whether it's mental health, therapy -- Trevor has done a lot

11  of research on his own and has asked me to recommend -- or ask

12  the Court to recommend that he be allowed to serve his

13  sentence at Butner, North Carolina, because as I believe the

14  Court knows, that is a facility that specializes in people

15  with sexual disorders.  And within the Bureau of Prisons,

16  there are several of those facilities; but that is certainly

17  one of the leading ones if not the leading one.

18         And it would also be about a five-hour drive from

19  the Washington, D.C. area, which is where three of the four of

20  the family members who are here with him today live.  So they

21  would be able to visit him there.

22         So he wants that help from the Bureau of Prisons.

23  He wants the therapy.  He's on drug therapy now, and my guess

24  is they will probably keep him on that.

25         Certainly when you consider the nature and history

64

1   of this offense, which has been detailed in the presentence

2   report, in the charging documents, as well as in the

3   stipulated factual basis, we do not minimize the harm to the

4   victims or the seriousness of this offense by any stretch of

5   the imagination.  We can't undo that.

6           The question is to what extent does the public need

7   to be protected from Trevor Shea and to what extent does he

8   need to be punished in order to fall in line with the dictates

9   of Section 3553.  I don't think the answer to either one of

10  those questions is what the guideline would suggest.

11          The history and characteristics of the defendant, as

12  you noted a moment ago, he is a first offender.  I guess he is

13  now a second offender because of what he did while he was on

14  pretrial release.  That's every lawyer's worst nightmare, and

15  it has become Trevor's worst nightmare to get that phone call

16  and find out that when you worked hard to get somebody out on

17  release, then the same thing happened again.

18          As I mentioned in the memorandum, I think that only

19  shows how deep his issues run and how totally unable he was to

20  control his impulses.  He didn't take any extra steps to try

21  to avoid detection; and the only thing I can liken it to is

22  somebody that knows they're going to have a drug test tomorrow

23  and smokes pot or snorts cocaine tonight.  It makes absolutely

24  no sense.  There is no answer but it does happen.

25          In this case, I think it happens because I think

1  Trevor is just not there emotionally to connect all the dots

2  and establish a link between actions and consequences.

3          He's got at least 15 years to develop and to think

4  about that.  He's been doing a lot of work while he has been

5  incarcerated for the last 12 or 13 months in terms of reading

6  and trying to get to the bottom of his own mental health

7  issues.

8          The sentence, obviously, needs to reflect the

9  seriousness of the offense, to promote respect for the law and

10  to provide just punishment.

11          Well, the sentence that is at the floor of what

12  we're dealing with here is so high; and to take this young man

13  basically from 20 up to age 35 or higher will achieve all of

14  the goals in that case.  Nobody can say that a sentence of

15  that length of time would not reflect how serious this offense

16  was.

17          I do think with Trevor there is a qualitative

18  difference, I suppose, between what he was doing and the type

19  of offense that normally results in prosecution under this

20  statute.  And again, without, you know, being accused of

21  trying to minimize what he did, I do think that there is a

22  significant difference between that and a direct contact,

23  hands on hand, or someone dealing with someone much, much

24  younger.

25          As the Court knows, Trevor is attracted to women his

1  own age for the most part, within his age group.  He threw out

2  a net and that net tended to catch people that were younger

3  than 18.

4          The activity is abhorrent regardless of who is being

5  victimized, whether it's an adult female or someone under 18

6  or someone 13 or 14 like was in this case.

7          But I think that that indicates that Trevor does

8  fall within that category of people that there is some hope

9  for, that can be changed; and I would hope that the sentence

10 that the Court fashions today will reflect that and give him a

11 chance to try to make those changes in his personality.

12         The sentence certainly has to afford adequate

13 deterrence of criminal conduct.  Well, the first charge

14 apparently didn't.  We've got a long time to find out whether

15 or not the second charge will; but I certainly think there's

16 every reason to believe it will, not only because of the

17 punishment but because of the amount of time that he's going

18 to have to mature as an individual physically and emotionally.

19         The sentence needs to provide the defendant with

20 needed educational, vocational training, medical care and

21 correctional treatment in the most effective manner.  Well,

22 there aren't too many people that appear before federal courts

23 as defendants that I think are going to benefit a whole lot

24 from incarceration; but I think Trevor might be one.  Because

25 of the expertise the BOP does have in these areas and because

1  it's obvious that he does need intensive, constant, almost

2  round-the-clock treatment for the disorder that has led to him

3  standing here today and because he's going to have to get a

4  job at some point in his future hopefully and come out and

5  work, I do think that he can benefit from that.  I know that

6  he has every attention of trying to take advantage of

7  everything the BOP has to offer.

8        Unfortunately, he has been housed down in Henderson,

9  Kentucky; and there's not a lot available there in terms of

10  educational or vocational training or therapy or anything like

11  that.

12        The Court needs to fashion a sentence that will

13  avoid unwarranted disparities among defendants similarly

14  situated.  Again, this is a rather unique set of facts; and

15  it's also a very unique defendant, being a 19-year old first

16  offender when he was first arrested.  So it's difficult to

17  find comparative cases.

18        So I think that a sentence at the low end of the

19  discretionary range that the Court has available to it would

20  certainly not do any violence to that part of 3553(a).

21        And finally, of course, restitution to the victims,

22  which is a nonfactor in this case, not that Trevor doesn't owe

23  his victims anything; but obviously, if there's any hope of

24  having financial restitution, then the longer he's locked up,

25  then the less he's going to be in a position to provide that.

1  So I don't think that that's a factor.

2          So considering all of these things, his cooperation,

3  his age, the fact that all of the materials before the Court

4  indicate that he is not only not fully developed but he has

5  not even been developed up to the point of his same age

6  counterparts, I would ask the Court to consider a sentence

7  that will allow him to get out sometime in the future, to

8  rejoin his family; to take advantage of this exceptional

9  support network that he has and to take advantage of the

10  supervision that the Court can provide while he's on --

11  obviously, he's going to be a registered sex offender.  He'll

12  be on lifetime supervised release, and it certainly is worth

13  taking a chance on.  Thank you, Your Honor.

14          THE COURT:  Thank you, Mr. Donahoe.

15          Mr. Shea, do you wish to address the Court?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  I will tell you, before you get started,

18  that I have read the letter that you submitted with some care.

19  So you have the absolute opportunity now to address the Court

20  in any way you believe.

21          THE DEFENDANT:  Your Honor, I would like to take

22  this opportunity to give some long-due apologies to a lot of

23  people and basically explain why I'm here.

24          First of all, I want to apologize to my family

25  because they've been helping me throughout everything; and

1  they don't deserve the grief that I've caused.  They don't

2  deserve all the pain and suffering that have consequenced from

3  my actions; and I apologize to my family.

4          I apologize to the Court for being a burden to the

5  country for being here today, being a burden to the resources

6  and to the Court and to everyone working, the FBI, everyone

7  who has been invested in my case.

8          But most of all, I apologize to my victims because

9  no one deserves the pain I've caused.  What I did was

10 horrible.  In my personality, I really do not like what I did.

11 I find it disgusting, and I apologize to my victims.  I know

12 that no apology will ever be good enough to them; but whatever

13 I can do to repay my victims and help them live full lives

14 free from crime, I would be more than willing to do because

15 I'm very upset of my actions and disgusted with my past.

16         I would like to explain some of the history of why

17 I'm here today.

18         I was -- I first dated my first girlfriend at age

19 12, and I became very obsessed.  After we broke up that year,

20 I became depressed for a long time.  I think it was over a

21 year.  And I realized that something was strange because my

22 peers at that age, they weren't obsessed with someone.  They

23 could go out with someone and break up the next week and not

24 have a problem with it.  I became obsessed in my relationships

25 and similarly obsessed in all the relationships that followed

1  my first one.

2          I always found that strange.  I couldn't quite

3  understand it until recently I was diagnosed with OCD; and as

4  you know, it's genetic.  It's passed through genes.  My mother

5  has OCD pretty severely, and I've been diagnosed with OCD.

6  I'm very obsessive in every relationship that I have.  I get

7  very depressed when arguments happen or when breakups happen.

8          Unfortunately, I think this is one of the cruxes

9  that led me to my crime because growing up, I was always

10  fascinated with technology and computers.  And my brother is a

11  computer scientist.  He taught me basically almost everything

12  I know about computers.  I loved cell phones, you know, just

13  anything to do with technology.  I've always had a fascination

14  with it growing up.

15          But when I was about nine years old, maybe even

16  younger than that, I first saw an advertisement online of

17  pornography; and it was a pop-up advertisement; and I became

18  very curious of the material, and I searched for more.

19          Well, I began searching for more material like this

20  at the same age my peers were playing hide and seek.  Because

21  of this, I felt awkward.  I developed a great sense of social

22  anxiety, and I became very timid in school, and I didn't make

23  many friends because I had this underlying sense of guilt --

24  of very strong guilt for what I was doing.  But I still didn't

25  understand it.  I didn't know why I was becoming obsessed with

1  pornography.

2         I didn't know, you know, why I liked it while other

3  people my age at that time, you know, didn't -- weren't

4  interested in that type of material.

5         So because of this, I felt guilty growing up and --

6  I felt guilty.  I didn't know how to find help.  I was too

7  embarrassed to seek help.  I didn't want to tell my parents.

8  I didn't want to tell anyone about it because I was disgusted.

9  I felt guilty.  I didn't understand it.

10        What began to happen was I started using

11  pornography -- started viewing pornography to relieve some of

12  the stress from all my relationships growing up as a child.  I

13  realized that after arguments, after breakups, I could get on

14  the computer and view pornography; and it seemed to relieve

15  some of the stress.

16        As I grew older, I started viewing more sadistic

17  pornography and sort of like an addiction.  Whereas a drug

18  user might need more of a substance as he or she progresses

19  just to feel the same effects, I needed more sadistic material

20  to just relieve the stress I was feeling from these

21  relationships.

22        It just progressed as I was growing older, up until

23  age 18 when I found out about webcam chats and blackmail from

24  other peers online.  I found that very stimulating because

25  unlike the pornography before, I could actually speak to my

1 victims and -- or speak to people online and actually -- yeah,

2 actually have a conversation with them live instead of just

3 viewing someone else doing something on a video.

4          Well, the online anonymity of this -- the anonymous

5 nature of the Internet encouraged me to use vulgar language

6 and do things that I would never dream of doing in real life.

7 If anyone knows about the Internet, it's a so much different

8 feel than it is in real life.

9          I can't go up to someone and use the language that I

10 used in real life because in my online chats, I have the

11 illusion of, you know, the anonymous nature.  No one knows who

12 I am, and I can just say whatever and not feel ashamed of it.

13 But I would never use those same words and language physically

14 or I would never do those same things physically.  The

15 Internet was kind of like a gateway for me to be anonymous.

16          I continued these chats until my arrest, but I would

17 like to point out that a year has passed since then.  I've

18 done a lot in Henderson County Detention Center to find out

19 why I had these very strong problems.  That includes -- I've

20 read books about my addiction.  Some inmates had books with

21 similar problems.  I spoke with other inmates about these

22 problems.  Some other inmates have exactly the same problem I

23 do, kind of an addiction.

24          I visited the psychiatric nurse several times; and

25 fortunately, I was prescribed Zoloft.  And on Zoloft, I -- my

1  sexual thoughts and urges greatly diminished.  I barely ever

2  think about sexual thoughts on a day-to-day basis, whereas on

3  the street or outside of my incarceration when I was doing

4  these crimes daily, I had sexual impulses and urges; and I

5  didn't have any kind of medication to help me with that.

6         Well, now I do.  In addition to that, I've talked to

7  my mother, who has OCD; and I've learned a lot from her.  I've

8  learned how to cope with it.  I've learned about medications

9  that worked for her.  I tried different medications, Prozac,

10 Zoloft, Wellbutrin.  I found that Zoloft works the best.  It's

11 definitely decreased my obsessive-compulsive disorder greatly.

12        Aside from controlling my own behavior, I've done

13 everything in my power to prevent future crime that is similar

14 to my crimes.  I've explained my crime to the Government.

15 I've suggested prevention methods.  I've given names.  I've

16 given IP addresses, e-mail addresses, everything I know about

17 my crime and all the suggestions I could think of to stop

18 future crimes.

19        And as Mr. Donahoe said, the Government, Mr. Cook,

20 said that this was immensely educational; and he believed that

21 it would help prevent future crimes.

22        So aside from controlling my own behavior, I also

23 feel that I've done everything I could to prevent future

24 crimes outside of, you know, people who might still be doing

25 this today.  I've tried to help the Government catch them as

1  well because no one deserves these crimes upon them.

2        I have a lot of goals for the future.  I would like

3  to take as many sexual treatment programs in prison as

4  possible to learn about my addiction, to learn about my

5  disorder and prevent it.  I want to do all the counseling I

6  can.  I want to further my college education.

7        You know, on the street, I was doing a major in

8  computer science.  Well, I'm not going to pursue that anymore

9  because, obviously, my crimes kind of don't work out in my

10 favor for that; but I do want to pursue some kind of degree.

11       I want to learn as much as possible, and I will do

12 everything in my power possible to achieve these goals and be

13 the person my parents raised me to be, which is a loving,

14 caring individual.

15       In conclusion, I feel extremely remorseful for what

16 I've done.  I'm disgusted with my past, but I feel that I'm

17 completely able to move on and look toward the future and do

18 everything in my power to assure the Government that I will

19 never commit any of these future crimes again.  I will never

20 be a burden to the Government again.  I will comply with

21 everything and take any counseling or treatment programs, and

22 I will do everything for my personal benefit to stop the life

23 of crime that I've lived these past couple years which has

24 been destructive to me and to all my victims and to the Court.

25       And I want to again apologize to all my victims.  No

1  one deserves what I did to them.  It was wrong.  I can never

2  express the sorrow I feel for everyone, including their

3  families.  Their families were upset for their daughters, and

4  I can never express the sorrow I feel for them.

5          I want to apologize to my family again because

6  they've been there for me throughout everything.  They've

7  spent their time, resources.  They've been through the pain

8  and suffering that my victims have been through basically.

9  They've stood by me, and they've had tremendous grief over my

10 situation.

11          And lastly, I want to apologize to the Court again.

12 I've been a burden to the country.  I've used resources that

13 the Government did not need to use.  I've done some horrendous

14 crimes, and I fully regret them.

15          I want to thank my family for being here, for the

16 support they've shown.  It means a lot to me.

17          Thank you.  I love you.

18          I want to thank Mr. Donahoe for his outstanding

19 counsel.  He's helped me throughout my whole case.  He's

20 answered every question.  He's been a tremendous help and an

21 excellent attorney, and I also -- lastly, I want to thank you

22 for the opportunity to speak.  And I'm not a great public

23 speaker.  I have ADHD and that's why I try to organize my

24 thoughts.  I stutter a lot, but I want to thank you for this

25 opportunity to speak and share my apologies.

1          I trust you to make a fair decision in my sentencing

2     in order to punish and rehabilitate me, and I know that you

3     will make a fair decision within your discretion.  Thank you.

4          THE COURT:  Thank you, Mr. Shea.

5          All right.  Mr. Donahoe, if you and Mr. Shea would

6     take your seats for a moment, I would like to hear from the

7     Government.

8          Mr. Cook.

9          MR. COOK:  Good afternoon, Your Honor.  I know the

10    Court has seen our sentencing memorandum.  It was quite

11    lengthy.  I recognize that the Court is well aware of the

12    nature and circumstances of these offenses, how we got to be

13    where we are today.

14         I do have some comments, however; and I think I want

15    to start with addressing some -- what I think are pretty

16    significant problems with arguments made in the defendant's

17    sentencing memorandum, some of which was followed up today in

18    his oral statements.

19         The defendant suggested in their sentencing

20    memorandum that 2G2.1 -- United States Sentencing Guideline

21    2G2.1 should be disregarded by this Court.  Primarily, they

22    stated that this guideline was intended to punish and control

23    pedophiles.

24         As a preliminary matter, this statement is

25    stunningly inaccurate.  The Court will note that that

1  statement that it is intended to punish and control pedophiles

2  is unsourced.  There's no citations to anything, and that

3  would be because that is demonstrably untrue.  There is no

4  mention in the guidelines themselves, no policy statement, no

5  specific offense characteristics, nothing.  There's no

6  legislative history that suggests that 2G2.1 is intended to

7  punish and control pedophiles.

8          As the defendant had to acknowledge in his memo,

9  pedophilia is an attraction to prepubescent minors, roughly

10  under 12.  The Court will note that in 18 United States Code

11  Section 2251, all minors, all children under 18 years of age

12  were protected specifically.

13          Now, the Congress, which represents the will of the

14  people of the United States, specifically chose to protect all

15  minors.  Now, 2G2.1 takes that up.  It does assess and counts

16  as an aggravator 4 offense levels for the exploitation of

17  children under 12.

18          But the absence of that aggravator does not equal a

19  mitigator and does not suggest that 2G2.1 is somehow entirely

20  intended to control pedophiles.

21          You'll note that it also adds 2 levels, as occurred

22  in some of the accounts here, for the exploitation of minors

23  between the ages of 12 and 16 years of age, who are likewise

24  often unable to self-protect as much as we might like.

25          The defendant in his sentencing memorandum then

1  proceeds to make other pretty amazing statements.  Mr. Shea's

2  sexual interests are described as age appropriate.  Now, the

3  Court's aware that two of the victims here, one in the first

4  set of offenses that Mr. Shea committed, one in that second

5  set while on bond were 13 years of age.  Several were 15 years

6  of age.

7         The sexual terrorism of 13-year olds, 15-year olds

8  is not age appropriate; and it's absurd to suggest that that's

9  the case, or even that the sexual attraction of a 20-year old

10 to a 13-year old is appropriate at any age.

11        There's another statement in the sentencing

12 memorandum that I think needs to be addressed.  It states,

13 "Unfortunately for Trevor, generally, his younger targets

14 proved susceptible."  Now, I barely know what to say to that.

15 Unfortunately for Trevor, as if this was an unfortunate

16 accident that minors were susceptible to his threats, his

17 extortion?

18        Judge, I want to point out -- and this was in our

19 sentencing memorandum -- that the defendant continually used

20 threats to minors that they could be prosecuted for child

21 pornography offenses as a way to control them.

22        After his prosecution began -- and I know this

23 specifically made it into our sentencing memorandum -- he

24 actually cited to the specific child pornography statutes as a

25 way to get minors to give in to his demands.

1          So it's not unfortunate for Trevor that generally

2    younger targets were susceptible.  He sought out younger

3    targets as a means to assist in controlling them.

4          Now, the memo from the defense then proceeds to

5    suggest that if Trevor were properly medicated and treated, he

6    would likely not reoffend.  Your Honor, this is demonstrably

7    untrue.  As noted in our sentencing memorandum, Mr. Shea

8    completed 17 sessions with a psychiatrist, as was made note in

9    Exhibit A to our sentencing memorandum, the Dr. Parker

10   psychiatric review.

11         He had 17 sessions with a psychiatrist and was on

12   medications and had allegedly developed skills to control his

13   behavior and within days of that update to his treatment was

14   sadistically sexually terrorizing multiple teenagers,

15   including a prior victim, including a 13-year old minor.

16         He's had that opportunity to be properly medicated

17   and be treated.  He's had that opportunity to go through more

18   than a dozen sessions and then reoffended with multiple

19   minors.  In fact, beyond that, as the Court will have noted in

20   the stipulated factual basis, it was not just minors that he

21   extorted.  There were also several others who were of the age

22   of majority or things didn't go to the extent of sexually

23   explicit conduct.  So that's kind of an amazing statement to

24   me to suggest that if only he were treated and had medication,

25   that he would do just fine.

1        It is a mere guess on the part of the defense -- and

2   then the defense asks the Court to adopt this mere guess --

3   that in 15 years, surely our medications will be better.

4   Surely we will know how to treat people better for this sort

5   of thing.

6        Now, one certainly hopes that that's the case.  It

7   would be good if we could control people like Trevor Shea with

8   medication and treatment.  I hope that that happens.

9        But, Judge, people used to think that within 10

10  years, we would be driving flying cars; and it didn't happen.

11  We can't make that kind of conjecture without support.

12       What we have is actual proof in front of us that

13  with the benefit of treatment, with the benefit of

14  medications, Mr. Shea still reoffended in a serial fashion.

15       Now, the memo and then today Mr. Donahoe also made

16  mention that Mr. Shea has an exceptionally strong and

17  supportive family and makes a suggestion, I suppose, that

18  family support will help him not to reoffend.

19       The Government recognizes that Mr. Shea's family

20  loves him, that it's full of successful, apparently

21  well-adjusted people who are worthy of respect.  The Court's

22  aware and I would note that his father is a Washington, D.C.

23  firefighter.  He's a fellow public servant, and we certainly

24  all thank him for that public service.

25       Mr. Shea was living in the home, however, with his

1   father, with other siblings, when he did the first set of many

2   victims and when he did the second set of many victims.

3          I would note that Mr. Shea's father stood up in

4   court and assured everyone, including the magistrate judge who

5   heard this matter here and in Maryland, that if Mr. Shea,

6   Trevor, was released, that his father would control him; and

7   he could assure us that he would not be a threat to minors.

8   And then Mr. Shea reoffended with several minors.

9          Mr. Shea prior to that, having been brought back in

10  on a bond violation for logging into one of his Myspace

11  accounts, you know, put on notice, still reoffended with other

12  minors.  So on at least one occasion and then several sets of

13  occasions in November and December while he was under the

14  direct care of his family, who was aware that Trevor was

15  capable of this kind of thing, he reoffended.

16         So with all due respect to his family, again, who I

17  know love him and support him and want very much to be able to

18  help him not reoffend, these offenses all happened while he

19  had that support.

20         Statements made in the sentencing memorandum that

21  there's every reason to be optimistic that Trevor Shea can

22  overcome his compulsions, again, this is just categorically

23  untrue.  There's no reason to think this.  In fact, there's

24  reason to believe that this is just not the case.

25         Again, the reoffense on bond and, frankly, also his

1  diagnosis of sexual sadism, where as the Government noted in

2  our sentencing memorandum, here he's working with

3  nonconsenting victims of his sexual sadism.  As noted in the

4  DSM-IV and as the Government put into our sentencing

5  memorandum, that means that his sexual sadism diagnosis is

6  chronic; that there is not reason to believe that he's going

7  to get past that.  The only question is can he control it.

8  And he's demonstrated quite well that he can't control it,

9  even with medication, even with treatment.

10         Now, the sentencing memorandum from the defense

11  proceeds to the child pornography guidelines, proceeds to

12  suggest the child pornography guidelines have been questioned

13  all over the country.

14         I just want to note that every case that was cited

15  within that memorandum with the exception of the Huffstatler

16  case out of the Seventh Circuit was related to 2G2.2, which

17  relates to the possession, receipt and transportation of child

18  pornography.  So all those critical comments that were put

19  into that sentencing memorandum about the sentencing

20  guidelines and just generally the child exploitation

21  guidelines, those relate to 2G2.2, not 2G2.1, where we are

22  today.

23         Regarding the Huffstatler case, that citation in the

24  sentencing memorandum was simply the Seventh Circuit

25  acknowledging that Congress had been involved in dealing with

1  how that guideline is figured out.  And then there's a

2  suggestion, not by the Seventh Circuit but by the defense,

3  that 2G2.1 has, therefore, been politically highjacked and

4  that that guideline is ridiculous.

5           Look, Congress created the Sentencing Commission,

6  okay.  Congress delegated creating these guidelines.  Congress

7  absolutely can undelegate and give guidance to the Sentencing

8  Commission, and I fail to see why that should not be taken

9  seriously when they've done so.  Congress represents the will

10  of the people of the United States.  To suggest that they're

11  getting involved in the guidelines is somehow politically

12  hijacking them is to take a shot at our very form of

13  government.

14           We are a political body.  Congress is a political

15  legislative body, and the phrase "political hijacking" is just

16  absurd.  It makes no sense.

17           I do want to turn now to the guidelines that I think

18  are absolutely appropriate in this case, and they do make

19  sense here.  The Court will note that the base offense level

20  starts at 32.  Now, I would note that that's actually entirely

21  appropriate.  That is a very high base offense level.

22           However, the production of child pornography, as

23  this defendant did on many, many occasions, is a very serious

24  offense, as recognized by Congress and its placing a 15-year

25  mandatory minimum sentence -- the minimum sentence for at

84

1  least that form of the offense is 15 years.

2         So the base offense level of 32 needs to approximate

3  the 15-year sentence, okay, where you have -- where if it's

4  only a 32 offense level, it needs to approximate it.  I'll

5  note for the Court that that actually -- the base offense

6  level 32, at criminal history 1 anyway, is 121 to 151 months.

7  So, in fact, one could say that the Sentencing Commission

8  actually undershot on that base offense level.  But be that as

9  it may, the 32 is what it is; and it makes sense for it to be

10 at least that.

11        Now, in some of the counts of conviction and

12 relevant conduct in this matter, 2 levels is added for the

13 fact that some of the minors were between the ages of 12 and

14 16 years of age.  That's entirely appropriate.  It is an

15 aggravator to the basic crime of child pornography production

16 because 12 to 16-year olds are more susceptible and are at

17 greater risk of being extorted by those like Mr. Shea.

18        The Court will note that 4 levels are added for the

19 production of sadistic and masochistic images.  I would note

20 this is actually quite rare under 2G1.1 that we see this

21 aggravator being added.  It is not frequent to see that.

22        Now, I know under 2G2.2, we're looking at

23 trafficking offenses for child pornography.  It's very

24 frequent for the Court to see the addition of the sadistic and

25 masochistic conduct enhancement.  Under 2.1, it is much more

1  rare.  And that is significant, and it is worthy of 4 levels

2  because what it represents is in this particular case, minor

3  females being extorted by this defendant to squat their bare

4  genitalia over lit candles.

5          In one instance, to -- for one of the girls to place

6  a needle -- pierce her own nipple on camera for this

7  defendant's view and enjoyment.  Many of these young girls,

8  many of these teenagers were forced to squat over the candles,

9  write degrading things on their chest, write essays for the

10 defendant where they said that they deserved this kind of

11 conduct, to fuel his sadistic fantasies that were utterly out

12 of control, remained out of control even after he was

13 captured.  Four levels for sadistic and masochistic images is

14 absolutely appropriate because it is a significant aggravator

15 of the basic case of child pornography production.

16          Two levels are added and in another instance, 3

17 levels are added for those crimes that he committed after he

18 was caught for obstruction of justice.  That's absolutely

19 appropriate.

20          It is significant and has to be recognized when a

21 defendant violates his bond conditions, particularly where

22 that defendant violates those bond conditions -- by the way,

23 let me note, on multiple occasions.  It's specifically

24 significant when he violates those bond conditions by actually

25 committing new crimes.  So that's entirely appropriate.

1        Two levels are added for distribution.  Now, the

2   Government was only able to find evidence in one circumstance

3   where Mr. Shea actually distributed some of the images that he

4   produced.  But that circumstance is significant because what

5   he did is he took one of the Jane Does -- if I remember

6   correctly, it was Jane Doe No. 9 -- and he carried through on

7   his threats that if she didn't do as he demanded, he would

8   distribute things to her friends or family.  Okay.

9        In that case, he distributed nude images of her to

10  her boyfriend -- who, by the way, was also a minor, which I

11  think needs to be taken into account here, that he was -- the

12  person to whom it was distributed was a minor -- distributed

13  nude images; and perhaps almost as humiliating to Jane Doe

14  No. 9, also this, quote-unquote, essay that this defendant

15  required her to write wherein she says that she deserves all

16  of this abuse.  That 2-level bit for -- offense level

17  aggravation for distribution absolutely makes sense.

18       Five levels were added for a pattern of

19  exploitation.  Let me note that that would apply really with

20  just about any one of his victims, since he repeatedly

21  victimized them over time.  Okay.  Now, Jane Doe 1, the Court

22  can see in the indictment that things all happened on a

23  particular day; but for many of the other victims, it happened

24  over a course of sometimes months, okay, where he continually

25  harassed them.  So really, just about any one of these

1  victims, that 5 levels would apply.

2        I think it is appropriate that it be such a

3  significant aggravator because what it shows is -- it reflects

4  the harm that is done -- the continual harm that is done to

5  each of those victims.  Obviously then, it also applies

6  because there were multiple victims.

7        Finally, there's an additional 5 levels added for

8  the fact that there were multiple counts based on his multiple

9  victims.

10        Now, I just want to note that is not double counting

11  for the pattern of exploitation.  I think it's important to

12  note that.  Okay.  Any one of those victims, there could have

13  been that pattern of exploitation; and that needs to be taken

14  into account, and it needs to be taken seriously.

15        But that he then had a pattern of exploitation with

16  several of those victims, several minor victims, it does make

17  sense to have additional recognition in the guideline

18  calculation for that just serial, large-scale collection of

19  victims.

20        And I might note that, with all due respect to the

21  Sentencing Commission, they effectively ran out of imagination

22  at adding 5 levels.  There are levels added for each of the

23  victims, but they stopped counting at 5.  He obviously had way

24  more victims than that.  So I think it's entirely appropriate

25  that all of those things are counted.

1          Now, there is within 2G2.1 and within the guidelines

2    as a whole, with the exception of the 2 levels for Mr. Shea

3    talking to us that may help us to educate the public better,

4    there is no specific mitigation anywhere in this, no specific

5    mitigation.

6          I would point further to some of the policy

7    statements within the guidelines.  I would point the Court to

8    United States Sentencing Guideline Section 5K2.8.  I'll note

9    that it's labeled "Extreme Conduct," and it's a policy

10   statement.

11         It states that, "If the defendant's conduct was

12   unusually heinous, cruel, brutal or degrading to the victim,

13   the Court may increase the sentence above the guideline range

14   to reflect the nature of the conduct.  Examples of extremely

15   conduct include torture of a victim, gratuitous infliction of

16   injury or prolonging of pain or humiliation."

17         Quite frankly, Mr. Shea hits all of those examples;

18   all of those examples.  Now, obviously, at a guideline range

19   of life, there is no place for the Court to depart upward; but

20   I point this out to say that the guideline manual -- the

21   Sentencing Commission has noted that extreme conduct does need

22   to be taken into account in judging the sentence and can be,

23   in appropriate cases, used as the basis for an upward

24   departure.

25         Judge, this man required girls to torture

1  themselves, to burn themselves, to scratch themselves, to put

2  needles through sensitive parts.  He required our victim here

3  in Indiana to put her head in the toilet when she didn't do

4  what he told her to do, to drink toilet water.  There is a

5  pattern -- long, consistent pattern of this defendant fueling

6  his sexually sadistic fantasies by torturing these young

7  girls; and it does need to be taken into account.

8         Now, in fairness, I need to point to United States

9  Sentencing Guidelines Section 5H1.1 that does say that age can

10  be relevant in determining what to do.  But the reason that I

11  point to that in tandem with 2.8 is that these things all work

12  together.  How much of a factor can that age really be in the

13  reflection of the sentence?  I want to come back to that idea

14  in a moment.

15         Now, obviously, what primarily directs this Court,

16  as important as the guidelines are, is that the Court is

17  supposed to look at 18 United States Code Section 3553(a),

18  take a look at the factors that it suggests and try to craft a

19  sentence that equals a just punishment.

20         The Court's well aware of the nature and

21  circumstances of these offenses, and I do not care to repeat

22  them because they're horrific.  This Court's aware of the

23  history and characteristics of this defendant.  He is a

24  diagnosed sexual sadist.  He engaged in a pattern of conduct.

25  He engaged in a two-year campaign of sadistic, sexual

90

1    terrorism of minor females.

2           His lack of a criminal history is considered within

3    the guideline calculation that still says to give him a life

4    sentence because he falls in criminal history Category I.

5           In regard to avoiding any disparate sentences, well

6    every case is certainly unique; and I don't mean to equate

7    this case necessarily to other cases that we've seen come

8    through -- in front of this Court and others in this district.

9    I do think it bears noting that there is a pretty significant

10   history of consecutive sentences in the case of multi-victim

11   producers of child pornography.  I think that needs to be

12   noted and considered.

13          All right.  Now, discussing the defendant's age and

14   particularly the suggestion that this defendant's brain was

15   just not developed.  I would suggest to the Court that that's

16   just really not very persuasive here in these particular

17   circumstances as to this defendant.  This was not a one or

18   two-time impulsive act.  Okay.  This was a pattern over time.

19          I think specifically and most importantly, the

20   suggestion that one is too young to understand that what

21   they're doing is wrong or control their impulses may make

22   sense -- may make sense, but I would still challenge the

23   pattern of it -- but may make sense on the first round of

24   victims for Mr. Shea.

25          But to come back and to reoffend on bond and collect

1  entirely new victims, to revictimize a former victim, that is

2  not a result of a lack of brain development.  That is the

3  result of sexual sadism and just a not caring about the

4  effects of his crimes.

5        In regards to the ultimate sentence, look, the fact

6  of the matter is that if this Court, if this Court were to do

7  a sentence all the way up to the top range here, which would

8  effectively be 240 years, okay, that would actually be judged

9  presumptively reasonable because it comports with the

10 guideline, life.

11       Now, I recognize that the Court has huge discretion

12 here, but I think it also has to be recognized that by all

13 involved that really only mitigator here is age and some

14 information that the defendant gave us to help us educate the

15 public.

16       How much does that cut against -- how much does that

17 cut against the nature and circumstances of his offenses; his

18 history and characteristics of sexual sadism and pattern of

19 conduct?

20       How should the Court structure this?  Obviously, the

21 Court has several options.  The Court could structure a

22 sentence that looks at each victim and perhaps imposes a term

23 of imprisonment for each victim, run consecutively to

24 recognize each victim as separately victimized.

25       The Court could go with each charged incident,

1   looking at the indictment where there were 4 counts, each

2   representing separate harms, although it occurred on the same

3   day.  There are several options the Court has here.

4          What the Government would suggest is this:  That in

5   determining the sentence, the Court needs to start at a term

6   of years that is not less than 33 years; and quite frankly,

7   there's many reasons, significant reasons, to take it far

8   beyond that sentence.

9          But I think that the reason that it has to be at

10  least, at least a 33-year term of imprisonment is that there

11  needs to be a recognition that on the front end under the

12  indictment and with the Jane Does 6 through 10 that are part

13  of the relevant conduct, that is a 15-year mandatory minimum

14  by itself.

15         On the back end, he has an entirely separate new set

16  of victims, including a revictimization of a girl that we had

17  not yet identified from his first set that occurred nearly a

18  year later when he absolutely was on notice that what he was

19  doing was wrong.

20         I can't imagine the circumstance where it makes

21  sense not to run at least two 15-year terms of imprisonment

22  for that consecutive to one another.  It makes no sense to do

23  anything other than that; and again, quite frankly, it may

24  make a lot of sense to go far beyond that.

25         Additionally, that new set of victims that were

1  collected in November and December of 2010, that happened

2  while he was on bond.  And I'm going to suggest humbly to the

3  Court that that needs to be taken very seriously and that

4  there needs to be a statement from the Court in the form of a

5  sentence that is consecutive to each of those counts of at

6  least, at least one year for each of those counts that has to

7  be run consecutive to any other sentence.

8           Ultimately, the Court's got discretion in what

9  you're going to do; but I suggest that as a starting point and

10 as something that we ought not go below.

11          This Court has to craft a sentence that recognizes

12 this two-year pattern of sadistic, sexual terror that

13 necessitates a sentence that's far in excess of the minimum

14 and necessitates some degree of consecutive sentences.  Thank

15 you, Your Honor.

16          THE COURT:  Thank you, Mr. Cook.

17          Mr. Donahoe, Mr. Shea, would you reapproach the

18 podium, please?

19          Anything further, Mr. Donahoe?

20          MR. DONAHOE:  I have a few comments based on the

21 Government's presentation.

22          I realize that 2G1.1 is drafted in a neutral way.

23 It doesn't mention pedophiles.  My point is and was in my

24 sentencing memorandum that this sentence that comes out of

25 that is generally designed and in this case certainly designed

94

1    to make sure that someone never walks the street again; and in

2    its presentation, the Government adopted that

3    lock-them-up-and-throw-the-key-away philosophy that is not

4    coming from the Sentencing Commission acting in its

5    traditional institutional role.

6           Mr. Cook said Congress created the Sentencing

7    Commission, and Congress can delegate and Congress can

8    undelegate.  Well, that's the point, that Congress delegated

9    the authority to the Sentencing Commission to do empirical

10   studies based on what sentences work, which ones don't and

11   what is the best sentence for a given crime, and then

12   proceeds, and in this case, to take that back.

13          And the only explanation is because it's politically

14   expedient because Congress isn't happy with what science shows

15   or what the Sentencing Commission is going to conclude on its

16   own.  So they say, "By the way, now, you have to do this."

17          And when you've got the Sentencing Commission in a

18   situation where it's not acting in its traditional capacity,

19   then I think the Court needs to take a long, hard look at

20   those guidelines.

21          Now, the ultimate question, though, is should the

22   Court take a chance or not on Trevor Shea ever reoffending.

23   The Government kind of glosses over the argument that we made

24   about age and the development of brain with the passage of

25   time.  I think in this case, with everything the Court knows,

1  there's every reason to believe that that is going to occur.

2  Mr. Cook's argument that that's not a factor here is based on

3  exactly the same factors that I would say prove that it is and

4  that is that Trevor reoffended and was unable to control his

5  impulses, which is what the studies show relates to the

6  immature brain.

7         So I think the sentence suggested by the Government

8  in this case is unduly punitive.  It's not necessary to

9  protect the public.  It doesn't further the goals of 3553.

10 There's nobody that can argue that 15 years in prison isn't

11 tremendous punishment for an individual that's done what

12 Trevor has done.

13        I'm not asking or suggesting that he should get a

14 free pass because of the number of victims or because he

15 reoffended while he was on release.  I'm asking the Court to

16 give him a chance to prove that he can develop into a type of

17 person that can control these urges.  And there is no reason

18 to believe -- there is nothing before this Court to believe

19 that that can't happen.  Thank you.

20        THE COURT:  Thank you, Mr. Donahoe.

21        Mr. Shea, you and I discussed earlier that statute,

22 Title 18, United States Code Section 3553.  Quite frankly,

23 every defendant that appears in front of me, we talk about

24 those things.

25        I do agree with Mr. Donahoe when -- I think during

1  the early portion of his presentation -- that when we talk

2  about pursuant to that statute imposing a sentence that is

3  sufficient but not greater than necessary to comply with the

4  purposes set forth in that subsection, that probably that

5  consideration is more important and more appropriate in this

6  case than some of the other cases that I see.  So I think it

7  deserves the time to go through those factors in determining

8  what is an appropriate sentence in this case.

9          We start, as has been noted, with the nature and

10  circumstances of the offenses; and I would incorporate the

11  stipulated factual basis into my consideration under this

12  factor.

13          You unquestionably took advantage of your victims in

14  this case.  You used it to groom them in order to coerce them

15  into performing masochistic sexual acts.

16          You showed no compassion towards these girls, even

17  when one of the youngest tried to commit suicide while on

18  camera.

19          I've read Dr. Parker's report where he concluded

20  that you are not a pedophile, and I have read the arguments of

21  your counsel in the sentencing memorandum.

22          However, there is no mention of any testing

23  determining whether you are a psychopath, which may indeed be

24  a more accurate description of you based upon your actions in

25  this case.

1          The teenagers in these videos are shown to beg you

2   to be released from your threats of exposure and humiliation.

3   By your own admission, you were sexually gratified by watching

4   the masochistic acts that you coerced your victims to perform.

5          Your actions to blackmail and sexually control these

6   teenage girls has caused emotional, mental and in some cases

7   physical harm.  These girls sobbed and bled.  They were

8   burned.  They cried out when in physical pain, and all of this

9   was captured and saved by you on videos that were found in

10  your Maryland home.

11         Quite frankly, I could go on.  The pre-sentence

12  investigation report includes more specifics, but I believe

13  that captures the spirit of where we are in regards to the

14  nature and circumstances of this offense.

15         Mr. Donahoe asks that I look, more importantly,

16  towards the history and characteristics that you present.  You

17  are currently 21 years of age.  It appears that you were

18  approximately 19 when the actions complained of in these

19  charges began.

20         You were born in Clinton, Maryland.  Your father, as

21  noted, is a firefighter who lives in Mechanicsville, Maryland.

22  Your mother is unemployed and lives in Bennington, Vermont.

23  You have a brother and sister who are gainfully employed,

24  professionally employed, quite frankly.

25         Your parents were divorced when you were --

1  according to your mother in the letter that she sent, when you

2  were 14.  Your father reports that you're intelligent and

3  you're gifted with computers.

4          You graduated from high school in Morganza, Maryland

5  in 2009.  You attended the College of Southern Maryland for a

6  year or almost a year and were later accepted at Towson

7  University, but your arrest in this case made your enrollment

8  impossible.

9          You have held jobs as a kitchen worker in one

10  restaurant and Arby's in another.  You have no criminal

11  record.

12          Your age and the closeness of your age to the

13  victims' ages are indeed mitigating factors in this case.

14  This is a predicament for the Court in this case because

15  although you are a young man, you intimidated the victims to

16  perform malevolent sexual acts on themselves.  If you were in

17  your late twenties or older, the decision about an appropriate

18  sentence may not be as hard to make.  The real question —— and

19  we've all asked it —— is will you hurt more people upon your

20  release from prison.

21          Given the circumstances of these offenses, it

22  appears that you do not like women and you enjoy dominating

23  them in awful ways.  The victims pled with you to stop the

24  torture.  You disregarded their pleas because you were high on

25  the control you exercised over them.

1          This is an incredibly upsetting characteristic to

2    see in someone so young because it is this trait primarily

3    seen in adults who graduate to more serious crimes of rape and

4    murder.

5          The Court must also look, as we've talked in both

6    memorandums, about a sentence that would reflect the

7    seriousness of this offense, promotes respect for the law and

8    provides just punishment for these offenses.

9          The offenses committed by you are particularly

10   offensive because of the number of minors involved and because

11   of the sadistic nature of these crimes.  The Court cannot

12   ignore your willful, repeated and flagrant violation of your

13   pretrial release conditions and the commission of additional

14   offenses of sexual exploitation of children after having been

15   given express notice of the consequences for such charges.

16         The Courts must also pursuant to the statute look to

17   fashion a sentence that affords adequate deterrence to

18   criminal conduct.  Your age cannot be used to alleviate the

19   seriousness of your crimes.  If too much leniency is shown,

20   then what is to stop other young men from participating in the

21   same type of heartless crimes?

22         The Court must look to a sentence to protect the

23   public from further crimes that you might commit.  Clearly,

24   that's the balancing test that Mr. Donahoe talks about.

25         What is more important, to protect society or to

1  allow you another chance in society and hope that you do not

2  hurt anyone else?  I believe the scales tip in favor of the

3  former.  I do believe that you pose a considerable and

4  menacing threat to the public at large.

5           The Court must also look to a sentence that provides

6  you with educational -- with needed educational or vocational

7  training, medical care or other correctional treatment in the

8  most effective manner.  Clearly, you need, as Mr. Donahoe

9  represents, consistent care and therapy for your sexual

10  disorder.

11          I acknowledge Mr. Donahoe's argument in regards to

12  what he sees as issues in the scientific study regarding the

13  development of frontal cortex areas of the brain.  I believe

14  here that the conduct overrides consideration to be given to

15  that particular report.

16          The Court has considered all of the factors of

17  3553(a) in determining an appropriate sentence in your case,

18  Mr. Shea.  As I indicated earlier, I will accept your pleas of

19  guilty and order the judgment thereon and sentence you

20  pursuant to your plea agreement.

21          Therefore, it will be the judgment of this Court

22  that pursuant to the Sentencing Reform Act of 1984, that you,

23  Trevor J. Shea, be hereby committed into the custody of the

24  Bureau of Prisons to be imprisoned for a term of 360 months on

25  each of Counts 1 through 4 under the indictment filed under

1   1:10-cr-96, and Counts 1 through 3 of the charging information

2   under 1:11-cr-169, all to be served concurrently, plus 12

3   months on each of Counts 1 through 3 of 1:10-cr-169, each

4   count consecutive to the extent necessary to produce a total

5   sentence of 396 months.

6           The Court will acknowledge that this is a downward

7   variance from the guideline range of life imprisonment; and

8   given the defendant's age, the Court believes it to be

9   sufficient to protect society from potential future crimes by

10  you.  It promotes respect for the law and addresses the

11  seriousness of the offenses.

12          I would be recommending that you be incarcerated at

13  a BOP facility that can address your unique sexual desires,

14  whether it's the facility in North Carolina as indicated by

15  Mr. Donahoe.  I also believe that there is an appropriate

16  facility right outside of Alexandria -- excuse me -- Richmond,

17  Virginia, that would also provide family members access to

18  Mr. Shea while incarcerated.

19          Mr. Shea, you shall pay to the United States a fine

20  of $5,000.  I am departing from the fine guideline range based

21  upon your financial resources and your future ability to pay.

22          I find that you do not have the ability to pay

23  interest, and I will waive the interest requirement.

24          You shall notify the Probation Department of any

25  material change in your economic circumstances that might

102

1   affect your ability to pay that fine.

2          You shall forfeit your rights to any property seized

3   during the searches of your residence.

4          Upon release from imprisonment, you shall be placed

5   on supervised release for a term of life on each of Counts 1

6   through 4, of 1:10-cr-96, and Counts 1 through 3 of Cause

7   No. 1:11-cr-169, all counts concurrent.

8          Within 72 hours of your release from custody of the

9   Bureau of Prisons, you shall report in person to the Probation

10   Department in the district where you are released.

11          While on supervised release, you shall not commit

12   another federal, state or local crime.  You shall not possess

13   a firearm, ammunition, destructive device or any other

14   dangerous weapon.  You shall cooperate with the collection of

15   a DNA sample.  You shall refrain from any unlawful use of a

16   controlled substance.

17          You will be suspended from drug testing mandated by

18   the Crime Control Act of 1994 based upon my determination that

19   you possess a low risk of future substance abuse.

20          You shall comply with the standard conditions as

21   adopted by the Judicial Conference of the United States as

22   well as the following additional nine conditions:

23          No. 1, you shall pay any fine imposed by this

24   judgment that remains unpaid at the beginning of the term of

25   your supervised release.

1          No. 2, you shall provide the Probation Department

2    access to any requested financial information.

3          No. 3, you shall not incur new credit charges or

4    open additional lines of credit without the approval of the

5    Probation Department.

6          No. 4, you shall submit to the search, with the

7    assistance of other law enforcement as necessary, of your

8    person, vehicle, office, business, residence and property,

9    including computer systems and peripheral devices.  You shall

10   submit to the seizure of any contraband that is found.

11         You shall warn other occupants that the premises may

12   be subject to these searches.

13         No. 5, you shall not possess any pornography,

14   erotica or nude images.  Any such material found in your

15   possession shall be considered contraband and may be

16   confiscated by the Probation Department.

17         No. 6, you shall participate in a program of

18   treatment for sexual disorders, including periodic polygraph

19   examinations as directed by the Probation Department.  I

20   authorize the release of the pre-sentence investigation report

21   and available psychological evaluations to the mental health

22   provider as approved by the Probation Department.

23         No. 7, you shall not have any unsupervised contact

24   with any minor child unless the contact has been disclosed to

25   and approved by the Probation Department.

104

1          In determining whether to approve such contacts

2   involving members of your family, the Probation Department

3   shall determine if you have notified the persons having

4   custody of any such minors about your conviction in this case

5   and the fact that you are under supervision.

6          If this notification has been made and if the person

7   having custody consents to the contact, then this condition is

8   not intended to prevent approval of the contact.

9          No. 8, you shall register as a sex offender in any

10  state where you reside, you are employed or attend school.

11         No. 9, you shall not possess or use a computer

12  unless you agree to comply with the computer restriction and

13  monitoring program at the direction of the Probation

14  Department.  Monitoring will occur on a random or a regular

15  basis.

16         You shall advise the Probation Department of all

17  computers available to you for your use.  Any computer or

18  Internet-enabled device that you are found to have used and

19  not disclosed shall be considered contraband and may be

20  confiscated by the Probation Department.

21         You shall warn other occupants of the existence of

22  the monitoring software placed on your computer.

23         You shall pay to the United States a special

24  assessment of $700.  Payment of the fine and the special

25  assessment shall be due immediately and is to be made directly

105

1   to the Clerk of the United States District Court.

2          Mr. Shea, you have the right to appeal your

3   conviction if you believe your guilty plea was somehow

4   unlawful or involuntary or if there is some other fundamental

5   defect in the proceedings that was not waived.

6          You also have the right to appeal your sentence if

7   you think your sentence is contrary to law.  With few

8   exceptions, any Notice of Appeal must be filed within 14 days

9   of the judgment being entered in this case.  If you cannot

10  afford the filing fee or cannot afford to pay the lawyer to

11  appeal for you, the Court would appoint a lawyer to represent

12  you in this appeal.

13         Also, if you intend to appeal, please discuss that

14  with Mr. Donahoe; and I will obligate Mr. Donahoe to file the

15  appropriate notices.

16         Anything left unresolved by this Court's judgment in

17  the opinion of the Government, Mr. Cook?

18         MR. COOK:  Your Honor, I believe that the Court has

19  addressed every issue.  I do have one point of clarification,

20  if I may.

21         In regard to the 12 months pursuant to 18 USC 3147,

22  that's being assessed on each of Counts 1 through 3 on case

23  No. 1:11-cr-169; is that correct?

24         THE COURT:  That's correct.  And they are to run

25  consecutive to each other, also.

1          MR. COOK:  Thank you, Your Honor.

2          THE COURT:  Mr. Donahoe, anything further?

3          MR. DONAHOE:  No, Your Honor.

4          THE COURT:  Mr. Shea, you will otherwise be remanded

5    into the custody of the United States Marshal pending

6    notification of the Bureau of Prisons.  Good luck to you, sir.

7          THE DEFENDANT:  Thank you.

8          COURT CLERK:  Please rise.

9          Court stands adjourned.

10          *(The proceedings were adjourned at 1:28 p.m.)*

1          CERTIFICATE OF COURT REPORTER

2

3      I, Cathy Jones, hereby certify that the foregoing is a

4  true and correct transcript from reported proceedings in the

5  above-entitled matter.

6

7

8    /s/ Cathy Jones                    February 29, 2012
   _____
9   CATHY JONES, RPR, FCRR
    Official Court Reporter
10  Southern District of Indiana
    Indianapolis Division
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25